STEPHEN PERRY & others *vs.* ELIAB GRANT & another.

Where a deed is delivered by A. to B. to be delivered to C., and the deed is afterwards found in the possession of C., and purports to have been signed, sealed, delivered, and acknowledged, the burden is on A. if he claims that the deed was to be kept as an escrow until the land therein conveyed should be paid for, to prove this, and that it was not duly delivered to C., and a court of equity will not order a reconveyance where they do not find on the evidence that the deed was not duly delivered, or where they find

that, if it was at first unfairly delivered, the plaintiff acquiesced in its retention as his deed.

Whether in this state the vendor of land has a lien upon the land sold after conveyance thereof, for the unpaid purchase money, is doubtful. At all events there may be a waiver of the lien by the vendor either express or implied, and it will be considered as waived whenever any security is taken beyond the personal obligation of the vendor, unless there is an express agreement or proviso that the lien shall be retained.

BILL IN EQUITY filed to remove a cloud from the title of the plaintiffs to a certain lot of land. The facts of the case are stated in the opinion of the court.

*Clapp,* for the complainants.

*Borden,* for the respondents.

DURFEE, J. This is a bill to remove a cloud from the title of the plaintiffs to a lot of land situated in Smithfield. The bill alleges that the plaintiffs, being the owners of the land, entered into a verbal agreement with the defendant, Eliab Grant, to sell and convey the same to him for $500, the payment thereof to be secured by mortgage of the land; that, in pursuance of this agreement, the plaintiffs executed a deed of the land and deposited it in the hands of Stephen Perry (who was himself one of the owners of the land, and acted as the agent of the other owners) as an escrow, to be delivered to Grant as their deed in exchange for the mortgage; that Grant, without giving the mortgage and without the consent of said Perry, obtained possession of the deed by false pretences, and caused the same to be recorded as their deed; that he afterwards conveyed said lot of land to the defendant Clark for the nominal consideration of $700, but in reality only in satisfaction to that amount of a debt due from said Grant to said Clark; and that the deed from Grant to Clark has likewise been recorded. The bill prays for a reconveyance of the land, and for further relief.

The answer of Grant denies that he agreed to give a mortgage, or that he obtained possession of the deed by false pretences, but alleges that he paid for the land in an indorsed promissory note payable to Stephen Perry, which Perry received and negotiated, and that the deed was freely delivered to him by John W. Perry, one of the makers. The answer of Clark admits that the only consideration for the deed to him was an existing debt, and denies that he had any knowledge, when the conveyance was made to him, that Grant had not paid for the land.

The claim of the plaintiffs to relief by a reconveyance rests upon the ground that their deed was not delivered. The deed purports to have been signed, sealed, delivered, and acknowledged, and it did get into the possession of Grant, who claims that it was duly delivered to him. This being so, the burden is on the plaintiffs to prove that it was not delivered. Upon the mere question of fact thus presented we need not here recite the testimony in detail. The testimony is very strong in favor of the plaintiffs, and but for certain circumstances which are not satisfactorily explained, would be conclusive. Those circumstances are the following, namely : 1st. The plaintiffs claim that the deed was only to be given in exchange for a mortgage, and not for any security short of that ; and yet Stephen Perry took the note of Grant indorsed by a third person for the amount of the consideration, and negotiated it ; and no explanation is given why he so received and used the note, if he was to have a mortgage, or why Grant should have given the note, if he understood that nothing short of a mortgage would satisfy his agreement. Certainly, if the note had been paid at maturity, it would have been deemed a waiver of any other security or payment. 2d. The plaintiffs say that Grant obtained possession of the deed by telling a deliberate falsehood, which must have been immediately detected, — their testimony being to the effect that Grant came where the deed was, in the absence of Stephen Perry, and got it from John W. Perry by falsely asserting that he wanted it only to show his wife, and would bring it directly back, and that Stephen Perry had told him he could have it for that purpose, and that this was on the 10th August, 1869 ; yet, though the conveyance to Clark was not made until September 28, 1869, and though Stephen Perry saw Grant frequently between August 10 and September 28, there is no evidence that either he or either of the other plaintiffs ever accused Grant of any misconduct in the procurement of the deed, or ever asked him to restore it. 3d. Stephen Perry advised Grant, while he had the deed, to sell the land to other parties, in order to raise money for the payment of the indorsed note which had been given, and testifies that he expected, when the note was given to him, that Grant was going to raise the money at the Savings Bank, and not require his indorser to pay it. In view of these circum-

stances, we are not prepared to find that the deed was not duly delivered, or that, if the deed was at first unfairly obtained, the plaintiffs did not acquiesce in its retention as their deed, and thus waive any objection to the manner in which it was obtained. We must therefore refuse the plaintiffs the relief which they pray, upon the ground that there never was any delivery of their deed to Grant.

Another ground upon which the plaintiffs claim relief is, that the land in the hands of the defendant Clark is subject to their lien for the purchase money, inasmuch as Clark knew, when he took his conveyance, that Grant had not paid for the land. The proof that Clark knew that Grant had not paid for the land is the testimony of certain witnesses, who testify that Clark said he knew, or said he supposed, Grant had not paid for the land, because he had nothing to pay for it with. Clark denies having made this statement. But admitting that he made it, and that the kind of knowledge which it shows is sufficient to charge him in case the lien exists, the question arises whether in this state the vendor has an implied lien upon the land sold, after conveyance thereof, for the unpaid purchase money, and if the lien exists in the absence of any waiver, whether in this case it is not to be held to have been waived or relinquished.

The existence of this species of lien is perfectly well established in England, and has been widely, but not universally, recognized in this country. It was borrowed from the civil law, and appears to have grown into favor in England at a time when the remedy for debt against real estate was very imperfect. In such circumstances it is easy to see why the courts were so ready to uphold the lien. The reason given in its support is, that a person who has obtained the estate of another ought not, in conscience, to keep it and not pay the consideration money in full, — a reason which would apply as well in support of a lien in favor of the vendor of personal as of real estate, if real estate were as liable as personal to be taken for debt. Yet even in England the lien has not been an unmixed benefit, for inasmuch as it rests upon an implication which is open to rebuttal by parol testimony, it is exposed to the uncertainties which appertain to that kind of testimony. In *Mackreth* v. *Symmons* 15 Ves. 329, Lord Eldon said: "It has always struck me, considering this subject, that it would

have been better at once to have held that the lien should exist in no case, and the vendor should suffer the consequence of his want of caution ; or to have laid down the rule the other way so distinctly, that a purchaser might be able to know, without the judgment of a court, in what cases it would, and in what it would not, exist." In this country the doctrine has met with much adverse criticism, not only on the grounds indicated by Lord Eldon, but also on the ground that the existence of the lien is inconsistent with the policy of our recording acts, and is an embarrassment to that facility in the transfer of real estate which is favored by our legislation. The American cases on the subject are very fully collected in a note in Perry on Trusts, § 232. From that note it appears that the lien is recognized in the courts of the United States, and in the courts of a majority of the states in which its existence has been considered, but that in Massachusetts, New Hampshire, Connecticut, and Delaware its existence has not been recognized by judicial decision ; and that in Maine, Pennsylvania, North Carolina, and Kansas it has been judicially repudiated. In Vermont and Virginia the lien, after having been recognized by the courts, was abolished by the legislatures. In this state the lien has neither been recognized nor considered by the courts. Where security is desired, the practice here is for the vendor to convey his land and take a mortgage back. This, the mortgage being recorded, furnishes security in a safe and perfectly unexceptionable form. It would be matter of regret if this practice should ever be to any extent superseded by a reliance upon the vendor's lien ; and therefore, if it were indispensable in this case to decide whether the lien exists in this state, we should wish to give the question a very careful consideration and inquiry.

The lien, being but an implication, may be shown by parol testimony to have been waived by the vendor. This waiver may be express or implied ; and the uncertainty in regard to the circumstances under which it is to be implied has been a fruitful source of litigation. The most usual proof of waiver is the taking of independent security ; yet in *Mackreth* v. *Symmons, supra*, Lord Eldon expressed the opinion that, even where such security is taken, there is no general rule by which it can be determined whether the lien is waived or retained, but that each case

depended on its own circumstances and would be determined differently by different judges. But in this country the courts have arrived .at a more definite rule of decision, and it appears to be pretty well settled by the weight of American authority that the lien will be considered as waived, whenever any security is taken beyond the personal obligation of the vendor, unless there is an *express agreement* or proviso that the lien shall be .retained. See 1 White & T. Lead. Cas. in the note to *Mackreth* v. *Symmons*, and cases there cited; *Fish* v. *Howland*, 1 Paige, 20 ; *Shirley* v. *Sugar Refinery*, 2 Edwards Ch. Ca. 505 ; *Selby* v. *Stanley*, 4 Minn. 65 ; *Fonda* v. *Jones*, 42 Miss. 792 ; *Schwartz* v. *Stein*, 29 Md. 112 ; *Gargan* v. *Shriner*, 42 Ind. 364 ; *Baum* v. *Grigsby*, 21 Cal. 172. This constitutes a tolerably certain rule, and one which, if the vendor's lien is to be recognized in this state, we think should be upheld by the court. But if in this case this rule is applied, the lien is lost ; for the grantee gave his note, indorsed or guaranteed by a third person, for the purchase money, to one of the vendors, who acted for himself and as the agent of the others, and there is no evidence of any stipulation or proviso, at the time the note was taken, that the lien should be reserved. Therefore, without determining whether in this state the lien has any existence or not, we think that, even if it does exist, this is not a case for its enforcement. The bill must be dismissed with costs. *Bill dismissed.*