359 P.2d 1055

Erastus PETERSON and Cornelia S. Peterson, Plaintiffs and Appellants,

v.

George B. CARTER and Elmer D. Loveless, d/b/a Zions Building and Construction Co., a co-partnership, and Robert M. Gillies and Clarice K. Gillies, Defendants and Respondents,

Walker Bank & Trust Company, Defendants.

Erastus PETERSON and Cornelia S. Peterson, Plaintiffs and Appellants,

v.

George B. CARTER and Elmer D. Loveless, d/b/a Zions Building and Construction Co., a co-partnership, and Frederick Rulon Sargent and Emily Sargent, Defendants and Respondents,

Home Benefit Building Association, and The Schenectady Savings Bank, Defendants.

Erastus PETERSON and Cornelia S. Peterson, Plaintiffs and Appellants,

v.

George B. CARTER and Elmer D. Loveless, d/b/a Zions Building and Construction Co., a co-partnership, and Foster D. Rappeley and Jane Doe Rappeley, Defendants and Respondents,

Home Benefit Building Association, and The Schenectady Savings Bank, Defendants.

Nos. 9305–9307.

Supreme Court of Utah.

Feb. 23, 1961.

Skeen, Worsley, Snow & Christensen and John F. Piercey, for appellants.

Christenson, Novak, Paulson and Taylor, Provo, for respondents.

HENRIOD, Justice.

Appeal from a summary judgment dismissing complaints against three separate purchasers of homes, against whom plaintiffs attempted to assert vendor's liens, under circumstances related below. Affirmed, with costs to said purchasers (the Rappeleys, Sargents and Gillies, defendants).

Plaintiffs owned lots and were engaged in the real estate business. Defendants Carter and Loveless were partners, operating a home construction business as Zions Building and Construction Co. The plaintiffs and the partners executed a contract on November 13, 1954. Plaintiffs recorded it on November 19, 1954. This contract fairly and reasonably can be paraphrased and abstracted, and pertinent portions quoted as follows, with emphasis added by us where deemed advisable:

It is recited that plaintiffs own the subject property which "they are holding for, in the main, residential development," and whereas defendant partners are experienced builders, and *"the parties hereto desire to work together on a home construction and sale program,"* and have agreed on such program, that plaintiffs "shall make available" to the defendant partners "for the construction" of "one such building upon each such lot," the lots described, and that "as they are needed or desired for construction" by the partners, they "would be deeded" to the latter, who thereupon would execute to plaintiffs an $850, 6% promissory note, *"to be payable upon the sale of the house."* When the deeds were executed, it was agreed that the partners "shall proceed to construct homes" and "shall with diligence carry such construction to completion," construction to commence within 30 days thereafter. It is also agreed that upon completion of a home, it "shall be sold" and the plaintiffs "shall receive the first $850 plus interest," and that *both parties* to the agreement *"shall participate in the sale of such homes* and lots and *shall participate equally in any real estate or fire insurance commissions payable in connection therewith,* provided that any commission payable" to plaintiffs "shall be in addition to the $850." Also: It is agreed that *"all sales will be listed through the Peterson Real Estate Co., owned and operated"* by plaintiff, unless mutually agreed otherwise. The parties further agree "that upon sale * * * the $850 * * * and the cost of construction, and the cost of sale and all other reasonable

and necessary expenses which are ordinary in building, shall be first deducted from the sale price *and from the balance, or net profit so determined,* ⅓ *thereof shall forthwith be paid over"* by the partners to the plaintiffs, *"as their share of the profit."*

Pursuant to the contract between plaintiffs and the partnership, the former executed three warranty deeds in the latter's name, obtaining three $850 notes in exchange. The partnership built the homes, and the purchasers mentioned bought them. The notes were not paid. Some years later, after occupancy by the purchasers, plaintiffs sued the partnership and were awarded judgment thereon, with interest and attorney's fees. The purchasers were joined in the suit, in which plaintiffs claimed a vendor's lien against the property purchased, for unpaid purchase money represented by the partnership's failure to pay the notes. On motion, the trial court dismissed the complaints and in a Memorandum stated that plaintiffs were "estopped from asserting rights against purchasers from the partnership or their mortgagees" because of the warranty deed executed and delivered with no reservations. Perhaps instead of "estopped," the word "precluded" may have been more advisable, because of the technical meaning of "estop." In either event, however, we believe and hold the trial court's judgment of dismissal, following the memorandum, to be correct.

Plaintiffs rely almost entirely on McMurdie v. Chugg [1] as authority for their position. This is based on what we believe to be three quite inaccurate assumptions they indulge: 1) that the facts in the instant case are on all fours with the McMurdie case, 2) that the recorded document here was a valid subsisting lien against purchasers from the partnership for value, and 3) that by its terms and its recordation, it gave notice of an unpaid purchase money obligation.

As to 1) and 2): In the McMurdie case, the vendor asserted a vendor's lien solely against his own vendee, without recording anything. We have no quarrel with that case or the principles it espouses. But factually it is far and away removed from the instant case, to whose facts we think such principles inapplicable. There was a recordation in the present case but it had to do with a somewhat hybrid document for recordation purposes that was quite inconsistent with any theory upon which a vendor's lien could be bottomed. Its implications show that it was nothing more than an agreement by two persons to join forces in a joint undertaking, one to furnish the realty, the other the labor and material looking to a building program for mutual profit. The instrument was even said to

1. 1940, 99 Utah 403, 107 P.2d 163, 132 A.L.R. 440.

be one for a mutual "home construction and sale program" The plaintiffs had absolute control over the $850.[2] Under the contract's terms they were to "participate in the sale of such homes." They were to participate equally in sales and insurance commission. They were entitled to ⅓ of the net profits of any sales made. *All of these benefits were within the complete control of plaintiffs* since *"all sales will be listed through the Peterson Real Estate Company, owned and operated" by plaintiffs*. Everything in the contract pointed clearly to the creation of a dummy conduit through which title technically might flow.

Plaintiffs call upon equity to protect them against a loss which easily they could have prevented. Some years after the conveyances they try recoupment of such loss under a so-called and erroneously assumed "vendor's lien" against purchasers who bought through plaintiffs' own created agency. Equity walks carefully but in both directions. In good conscience under the facts here, plaintiffs must be considered as conveyancers jointly with the partners, their representatives in sales of homes, and they must be treated as co-operators under the joint program of construction, in dealing with purchasers thereof for value.

As to 3): Plaintiffs *assume* that the document in question gave notice of an unpaid obligation on the purchase price. Contrariwise we think any reasonable person would interpret it as giving notice in reverse. Its language points to a joint building venture, joint conveyancing for all practical purposes through a dummy of their choice, and over which they had absolute control as far as moneys due were concerned, joint responsibility to convey a clear title by warranty to purchasers from the venture, and power to control the purchase price by an unequivocal requirement that sales would be listed with plaintiffs' real estate company. We believe that if any notice were given, it was to the effect that would lead a reasonable person to believe and assume that all sums due under the contract had been paid and that all the covenants inuring to the benefit of the plaintiffs had been performed,—and that if not, it was plaintiffs' own failure to protect them-

2. Plaintiffs easily could have protected the amount without any recording of the agreement, by simply following the suggestion of the statute that has to do with Warranty Deeds, when, under Title 57–1–12, Utah Code Annotated 1953, it is stated that: "Any exceptions to such covenants may be briefly inserted in such deed following the description of the land." Plaintiffs could have protected the amount simply by saying that "This deed is subject to $850 due on the purchase price."

selves, and that they had waived any claim to any real or illusory vendor's lien.

WADE, C. J. and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.