375 A.2d 906.

PASCO RUSSO *et al. vs.* LOUIS CEDRONE *et al.*

JULY 7, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

552

DORIS, J. This case involving the conveyance of a certain parcel of land in Cranston, Rhode Island, comes to us on appeal from a judgment entered by a Superior Court justice which granted the defendants' motion for summary judgment pursuant to Super. R. Civ. P. 56.

The facts are somewhat complicated by the number of plaintiffs and defendants, all of whom participated at various stages in the conveyance of this parcel of land. According to the record, a purchase and sale agreement was executed by Pasco Russo, the seller, and Louis Cedrone, the buyer, on October 23, 1971. It provided for the purchase of a certain estate in Cranston with the exception of one lot which was to be described fully in a separately appended schedule.[1] The agreement also provided for a purchase price of $130,000 plus "One Thousand ($1,000.00) Dollars per lot. Each lot shall be paid for as sold. It is agreed by the parties that the number of lots shall be not less than forty-five (45) nor more than forty-six (46)."

On April 6, 1972, Russo conveyed the parcel to Cedrone by warranty deed with no exceptions or reservations, and particularly without mention of any lot which was to be excepted from the parcel. The closing took place in the office of the attorney for plaintiff Joseph Sullivan. Sullivan received a promissory note for $100,000 secured by a first mortgage on the property, said note being executed

---

[1]Apparently, this schedule was never completed and was not attached to the purchase and sale agreement.

by defendants Cedrone and Louis Giuliano. In addition, a subordination agreement was executed by the Colonial Loan Company, Inc. (Colonial) subordinating a mortgage it held on the property from Russo to this newly executed first mortgage. This subordinated mortgage was assumed by Cedrone. The deed, mortgage and subordination agreement were all recorded two weeks later on April 20, 1972, at the Cranston Registry of Deeds. There was no mention in any of these recorded documents of the purportedly excepted lot or the provision for additional payment of $1,000 for each lot sold.[2]

On August 15, 1972, Russo recorded the purchase and sale agreement at the Cranston Registry of Deeds.

On November 17, 1972, Cedrone conveyed the property he had purchased from Russo to himself and defendants Giuliano and Victor Gemma as tenants in common. The three then executed a promissory note secured by a mortgage to defendant People's Savings Bank. The deed and mortgage were recorded on November 20, 1972, and the mortgages to Sullivan and Colonial were paid in full from the proceeds of the new loan.

On November 30, 1972, plaintiff Sullivan recorded the purchase and sale agreement of October 23, 1971 that had already been recorded by plaintiff Russo on August 15, 1972. However, it now contained a handwritten assignment of all Russo's interests to Sullivan, and curiously, the assignment was dated May 2, 1972, three months prior to Russo's recording of this same instrument without the assignment endorsed upon it.

In August 1973, the first complaint was filed in Superior Court and a *lis pendens* was recorded at the Cranston Registry of Deeds.

---

[2] It is undisputed that the property was never subdivided, no lots were sold, and the $1,000 per lot payments were never made.

On September 17, 1973, Cedrone and Giuliano conveyed their interest in the property to Gemma by a quitclaim deed which was recorded on September 20, 1973.

In February 1974, Gemma conveyed the land by warranty deed to defendant DiOrio Builders, Inc., the final party to this suit.

After a series of amended complaints, answers, and motions, a motion for summary judgment was made by defendants Cedrone, Gemma, Giuliano and DiOrio, and granted to all defendants. This was appealed and the case was remanded for the introduction of newly discovered evidence.[3] The trial justice ignored this remand order saying it was without instructions and also that it was improper for only one justice of the Supreme Court to issue an order remanding a case to Superior Court. He was incorrect on both counts.

The order of this court was predicated on plaintiffs' motion for remand and the trial justice could easily have ascertained the reasons for the order by asking the parties or by requesting to see the motion as entered in the Supreme Court. As far as the propriety of an order of a single justice, it should be noted that the order to remand was an order of the Supreme Court and was merely signed by a single justice as is our custom. The Superior Court justice's view that the order was of no effect was therefore erroneous. However, we must still determine if he was correct in denying plaintiffs' motion for relief from summary judgment and in affirming his original judgment granting summary judgment to all defendants.

We first note that defendant People's Savings Bank never moved for summary judgment under Rule 56. Absent such a motion, they were not ordinarily entitled to be included in the entry of the judgment. However, since

---

[3] *Russo v. Cedrone*, 115 R. I. 940, 346 A.2d 661 (1975).

all parties involved in the controversy were given an adequate opportunity to present evidence to refute or support entry of the judgment, we think it appropriate that the bank be included in the judgment. See 1 Kent, *R.I. Civ. Prac.* §56.10 at 424 (1969); 10 Wright & Miller, *Federal Practice and Procedure: Civil* §2719 at 454-55 (1973).

We have often stated the rule for granting summary judgments and the appellate rule for reviewing them.

> "If there existed a genuine issue of fact, then it was error to grant these motions. On the other hand, if the record disclosed no genuine issue as to any material fact, it was the duty of the trial justice to grant the motions, if in accord with the applicable law. In passing on these motions the trial justice was obliged to consider the affidavits and pleadings in the light most favorable to plaintiff. *Hodge* v. *Osteopathic General Hospital,* 107 R.I. 135, 265 A.2d 733. On appeal this court is bound by the same rules. *Hodge* v. *Osteopathic General Hospital, supra." Kirby, Inc.* v. *Weiler,* 108 R.I. 423, 425, 276 A.2d 285, 286-87 (1971).

Thus we must decide if such an issue of material fact existed, and if not, whether defendants were entitled to summary judgment as a matter of law.

The two questions in this case are whether the seller of property (or his assignee) retains some interest in the property after a warranty deed has been delivered, when the buyer allegedly fails to comply with payment terms of a prior purchase and sale agreement; and whether the seller (or his assignee) may maintain an action for the balance of the monies allegedly due under the prior purchase and sale agreement.

As to the first question, it is framed in terms of whether a "vendor's lien" may properly be imposed upon the property, and whether such a lien would be precluded in this case by the equitable doctrine of waiver or estoppel. Further, as to the single lot which according to the pur-

chase and sale agreement was to be reconveyed, there is the additional question of whether the doctrine of merger by deed precludes the reconveyance of the lot.

A vendor's lien is an equitable doctrine, implied by law, designed to secure debts against real estate. It is a doctrine not favored in the law because it is contrary to the policy of encouraging registration and publicity of conveyances in order to guard against fraud. *See Perry* v. *Grant,* 10 R.I. 334 (1872). The plaintiffs, however, cite our decision in *Passarelli* v. *Passarelli,* 94 R.I. 157, 179 A. 2d 330 (1962), to show that the vendor's lien still has full vitality in Rhode Island. In *Passarelli* a 74-year-old illiterate woman had, without the aid of counsel, conveyed real estate by warranty deed to her son and had not been paid. We indicated that a vendor's lien might be appropriate in that case but remanded it to the Superior Court for a further factual finding as to the status of the parties.

The plaintiffs apparently feel that their situation should also be resolved by a remand to Superior Court to determine if they have waived their right to a vendor's lien. We disagree and find that if plaintiffs did have the right to a vendor's lien, it was waived as a matter of law by their conduct at, and subsequent to, the closing.

The plaintiffs were present and represented by counsel at the closing and accepted valuable consideration at that time. The plaintiff Russo received the proceeds at the closing, and plaintiff Sullivan received a first mortgage on the property. There was no indication that it was their intent to maintain a lien on the property for any balance that may have been due. The rule in this state for waiver of a vendor's lien was stated long ago as follows:

> "[T]he lien will be considered as waived, whenever any security is taken beyond the personal obligation of the vendor, unless there is an *express agreement* or proviso that the lien shall be retained." *Perry* v. *Grant, supra* at 339.

As far as their conduct subsequent to the closing, plaintiffs say that it shows that they had no intention of waiving the vendor's lien. However, this is contradicted by the fact that they waited over two years to assert the lien. Further, although Russo recorded the purchase and sale agreement on August 15, 1972, alleging that it created a lien on the property in his favor, the later recording by Sullivan on November 30, 1972 showed that Russo had already assigned his entire interest to Sullivan. The recording by Sullivan took place after the property had been conveyed and remortgaged, as well as being after Sullivan's mortgage had been discharged. This is inconsistent with an intent to retain a lien and amounts to estoppel as a matter of law.

> "Nor can a man stand by and see another part with his money upon the faith of a conveyance, and then, taking advantage of some defect known to him, claim that, under a subsequent conveyance, he has acquired a title superior in equity to that of the first purchaser." *Bullock* v. *Whipp*, 15 R.I. 195, 197, 2 A. 309, 310 (1885). *See Gaddes* v. *Pawtucket Institution for Savings*, 33 R.I. 177, 192, 80 A. 415, 420-21 (1911); *Peterson* v. *Carter*, 11 Utah 2d 381, 359 P.2d 1055 (1961).

We next look at the clause in the purchase and sale agreement requiring the reconveyance of a certain lot of the estate which was to be fully described at a later time. This clause does not appear in the warranty deed from Russo to Cedrone. It may be that this clause made the purchase and sale agreement unenforceable due to a lack of compliance with the specific requirement of the Statute of Frauds. However, once the warranty deed was accepted, it had the effect of superceding any provisions of the purchase and sale agreement which may have been in conflict with it. Absent allegations of fraud or mistake (and there are none here), the warranty deed is presumed to be the final agreement between the parties and conveys full

rights to the property. See G.L. 1956 (1969 Reenactment) §§34-11-4, 34-11-15, and 34-11-16. Thus any right to reconveyance that might have been reserved by the purchase and sale agreement was lost when the warranty deed was given.[4] *See e.g.,* *Pryor* v. *Aviola,* 301 A.2d 306 (Del. Super. 1973).

The fact that plaintiffs no longer have any interest in the property does not necessarily mean that they are also precluded from recovering money that may still be owed to them. We note that in plaintiffs' complaint they ask for payment of the allegedly unpaid balance of the purchase price as well as money in compensation for the lot that they sought to have reconveyed. Furthermore, the affidavits conflict as to whether any money is owed to plaintiffs under the contract or some other agreement. This raises issues of material fact as to the question of money owed, which precludes summary judgment. *See Kirby, Inc.* v. *Weiler, supra.*

Therefore, a blanket summary judgment, which included both the issue of whether the plaintiffs retained an interest in the property, *and* the issue of whether money was still to be paid, should not have been granted. Instead, the trial justice should have granted what has sometimes been termed a "partial summary judgment," but which is actually an order under Super. R. Civ. P. 56(d) establishing certain facts and leaving others for determination at the trial. See *Norberg* v. *Warwick Liquors, Inc.,* 107 R.I. 129, 134, 265 A.2d 648, 651 (1970). The trial justice erred in not making such an order since some, but not all, of the issues should have been resolved in accordance with the procedures of Rule 56(d).

The plaintiffs' appeal is sustained in part and denied in

---

[4]Note that the purchase and sale agreement articulated this fact that acceptance of a deed would be deemed to be full performance and a discharge of the obligations contained in the agreement.

part, the judgment of the Superior Court is affirmed in part and reversed in part and the case is remanded to the Superior Court for further proceedings.

*Quinn, Cuzzone & Geremia, John F. Cuzzone, Jr.,* for plaintiff.

*J. Renn Olenn,* for Louis Cedrone, Louis Guiliano, Victor A. Gemma and DiOrio Builders, Inc.; *Carroll, Kelly & Murphy, James E. Murphy,* for People's Savings Bank, defendants.