Norman A. LIZOTTE et al.

v.

Edna MITCHELL

v.

Yorktown Associates, Inc., et al.

No. 2000–23–Appeal.

Supreme Court of Rhode Island.

May 16, 2001.

John J. Kupa, Jr., North Kingstown, for Plaintiff.

James H. Farrell, Chepachet, Lawrence P. McCarthy, Providence, Paul M. Finstein, Warwick, for Defendant.

Present LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on March 8, 2001, pursuant to an order directing the plaintiffs to appear and show cause why the issues raised in this appeal should not be summarily decided. The plaintiffs, Norman A. Lizotte and Patricia Lizotte (plaintiffs or Lizottes), appealed the grant of summary judgment entered in favor of defendant, Edna Mitchell (defendant or Mitchell) and third-party defendants, Yorktown Associates, Inc. (Yorktown), and John Walsh, Jr. (Walsh).[1] After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that cause has not been shown. Therefore the case will be decided at this time.

### Facts and Procedural History

On August 12, 1987, the Lizottes[2] and Mitchell entered into a purchase and sales agreement (sales agreement) for land owned by defendant and located on Moosup Valley Road in Foster. It is undisputed that all parties to the contract intended that the lot size would be approximately 300 × 700 feet, although the actual boundary lines of the disputed parcel were not established when the sales agreement was executed. By its terms, the sole contingency of the sales agreement, included at plaintiffs' request, was the issuance of a building permit from the Town of Foster (town).

Before closing, on October 20, 1987, the Department of Environmental Management (DEM) approved an Individual Sewage Disposal System (ISDS) design for the property. The design application provided that the approval would expire within one year if the water supply was an individual well, or within two years if there was access to a public water supply. The lot in question is not served by a public water supply. Further, under the terms of the DEM approval and town zoning ordinances, the approved ISDS design was required to be located at least 100 feet away from the established westerly property line. The plaintiffs asserted that they were informed that the approval was valid for two years and further that, Mitchell's sales representative, third-party defendant Schey, assured them that Mitchell would obtain all approvals necessary for the issuance of a building permit.

The closing was held in February 1988; however, plaintiffs had not yet applied for a building permit. The plaintiffs elected to close on the property, notwithstanding the outstanding building permit contingency. Mitchell conveyed a 5.33 acre lot to plaintiffs by warranty deed and delivered the ISDS design that previously had been approved by DEM.

Further, although plaintiffs proceeded with the closing and accepted the ISDS approval, the lot had not been formally surveyed and plaintiffs had not been

---

1. Although Gerry Schey (Schey) was originally included as a third-party defendant in this action, the other third-party defendants informed the Court in their Sup.Ct. R. 12(A) counter-statement that Schey subsequently filed for bankruptcy and all his debts have been discharged.

2. Patricia Lizotte and Norman Lizotte were apparently unmarried at the time the parties entered into the agreement. As a result, her signature on the August 12, 1987 purchase and sales agreement is penned in her maiden, rather than married name.

shown a map of the property until the day of the closing. Because there was no formal survey, plaintiffs could not be certain that the land they were purchasing complied with all building and zoning requirements. The parties therefore executed a supplemental written agreement conveying an additional fifty-foot strip of land to be used if the survey disclosed that the original conveyance was nonconforming. The parties further agreed that if a portion of the additional fifty-foot strip was unnecessary for a buildable lot it would be transferred back to defendant.

Approximately two years after the closing, plaintiffs finally applied to the town for a building permit, but were informed that the ISDS permit had expired. Unfortunately, a land survey, necessary for the ISDS reapplication, disclosed that the lot did not conform to the 100–foot setback requirement for the location of the ISDS. The survey revealed that the design sketch presented to DEM and provided to plaintiffs at the 1988 closing incorrectly identified the ISDS as being 100 feet from the westerly property line, when in fact it was only 30 feet from the property line. The zoning board subsequently informed plaintiffs that a special exception or variance was required to put the ISDS within thirty feet of the property line.

On September 24, 1991, plaintiffs filed a four-count complaint against defendant, alleging failure to disclose, deceit or false misrepresentation, breach of contract and negligence. Included with each count, was a demand for compensatory and punitive damages. Upon being informed of the action filed against her, defendant sought approval for another lot that would be satisfactory to plaintiffs. A new lot, larger than the lot conveyed in February 1988, was approved by the town and a plan was recorded on March 16, 1993. The defendant subsequently made several offers to settle this case by trading deeds with plaintiffs; however, these offers were rejected.

Unable to settle the issue, defendant moved to join third-party defendants to the action and filed a two-count, third-party complaint against Yorktown, Walsh and Schey that alleged professional negligence and sought indemnification and damages. The motion was granted and an order was entered to that effect on November 24, 1992.

On December 15, 1997, third-party defendant Walsh filed a motion for summary judgment; and Mitchell joined in the motion. A hearing was held in Kent County Superior Court at the conclusion of which the trial justice issued a bench decision granting summary judgment in favor of the defendants denying and dismissing both the original and third-party complaints. An order to that effect entered on February 17, 1998, and final judgment was entered on January 10, 2000. The plaintiffs filed a timely appeal.

The plaintiffs have raised two issues for determination by this Court. First, plaintiffs alleged that the trial justice erred in granting summary judgment without permitting the full development of factual evidence to establish, that in reliance on misrepresentations made by defendant and her agents to plaintiffs and DEM, plaintiffs were fraudulently induced to purchase the disputed property. The plaintiffs also argued that the trial justice erroneously determined that plaintiffs had failed to plead the issue of recision in their complaint and pointed to count 4 of the complaint which, they alleged, specifically addressed the question of recision.

### Standard of Review

"It is well settled that this Court reviews the granting of a summary judgment motion on a *de novo* basis." *M & B*

*Realty, Inc. v. Duval,* 767 A.2d 60, 63 (R.I.2001) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.,* 682 A.2d 455, 457 (R.I.1996)). "In conducting such a review, we are bound by the same rules and standards as those employed by the trial justice." *M & B Realty, Inc.,* 767 A.2d at 63 (citing *Rotelli v. Catanzaro,* 686 A.2d 91, 93 (R.I.1996)). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I.1996). "[A]ccordingly, we will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Woodland Manor III Associates v. Keeney,* 713 A.2d 806, 810 (R.I.1998) (quoting *Rotelli,* 686 A.2d at 93).

### Discussion

■ Based on our review of the record, we agree with the trial justice, who found that plaintiffs failed to establish,

"with any particularity what specific representations were made to them in order to induce them to enter into the purchase and sale agreement * * *, or, more importantly, which induced them to forgo their contractual right to take advantage of the written contingency appearing in the sales agreement."

The plaintiffs conceded during the summary judgment hearing that the alleged misrepresentations were made to them af-ter the execution of the sales agreement. Accordingly, we are of the opinion that plaintiffs failed to produce any evidence of actionable misrepresentation that induced them to close on the property. Significantly, plaintiffs allowed a valid ISDS permit to lapse,[3] and did not apply for a building permit until almost two years after the transfer of the deed, fully aware that failure to obtain a building permit prior to the closing date would have excused performance of the agreement. Further, the record demonstrates that plaintiffs were obviously concerned about possible zoning problems, as evidenced by the fact that plaintiffs insisted on a side agreement for an additional fifty-foot lot to ensure the issuance of a building permit. We note that plaintiffs are real estate agents themselves and were not "simple purchasers" as they alleged, but rather, as demonstrated by the side agreement on the day of closing, we are satisfied that plaintiffs were well aware of the risks inherent in their acceptance of the deed.

### Merger by Deed

■ "The doctrine of merger by deed provides that once a warranty deed is accepted it 'becomes the final statement of the agreement between the parties and nullifies all provisions of the purchase-and-sale agreement.'" *Haronian v. Quattrocchi,* 653 A.2d 729, 730 (R.I.1995) (quoting *Deschane v. Greene,* 495 A.2d 227, 229 (R.I.1985)); *see also Russo v. Cedrone,* 118 R.I. 549, 557, 375 A.2d 906, 910 (1977). Here, plaintiffs waived all conditions of the sale when they closed on the property knowing full well that the lot had not been surveyed and they had not obtained a building permit. The warranty deed therefore became the final statement of

---

3. The plaintiffs argued that by the time they received the original ISDS permit it was only valid for an additional six months. Although this may have been accurate, it is of no mo-ment to this appeal because plaintiffs waited almost two years after the closing to apply for a building permit, well beyond the full one-year-approval-limitation.

the agreement between the parties, and any purported contract claims were barred by the doctrine of merger by deed.

■ Moreover, the doctrine of *caveat emptor* applies to contracts for the sale of land. The sales agreement included a contingency that would have permitted plaintiffs to walk away from the sale if the condition was not met. As the trial justice stated, "[i]t is undisputed that [plaintiffs] did not apply for [a] building permit until after the sale. They were at their peril in doing so." As real estate agents, plaintiffs knew or should have known that absent a survey of the lot, they were charged with the duty to ascertain that the lot they were purchasing was buildable. The plaintiffs cannot later complain about consequences they could have avoided.

We therefore conclude that by accepting the warranty deed, the plaintiffs waived any contract claims based upon the sales agreement. Having determined that the plaintiffs' contract claims are barred by the doctrine of merger by deed, the issue of recision of the contract necessarily must fail.

For the reasons set forth, the plaintiffs' appeal is denied and dismissed. The judgment is affirmed and the papers in the case are remanded to the Superior Court.

Chief Justice WILLIAMS did not participate.