[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter came on for a nonjury trial before Mr. Justice Lanphear on October 8, 2003. Thereafter, the parties submitted post-trial memoranda.
 I. FINDINGS OF FACT.
The following facts are uncontested:
1. J. Raymond Pearson is the manager of HORIZON PROPERTIES, LLC., ("Horizon"), the Plaintiff herein, and a duly organized limited liability company. Mr. Pearson is a resident of Washington County.
2. Mr. Zachary Schartner is a principal of INDIAN CORNER HOMES, LLC., ("Indian Corner") the Defendant herein. It is a duly organized limited liability company. Mr. Schartner was the representative of Indian Corner who dealt with Horizon.
3. In 1999, Indian Corner was the owner of four lots of real estate located on Indian Corner Road in the Town of North Kingstown in the County of Washington ("the subject property"). The property is more completely described in the Purchase and Sales Agreement in evidence herein (a copy of which is appended to the answer and counterclaim).
4. On April 7, 2000, the parties entered into a Purchase and Sales Agreement ("Purchase Agreement") for the subject property wherein the lots would be conveyed from Indian Corner to Horizon in return for the payment of $200,000. The Purchase Agreement contained other provisions.
5. The Purchase Agreement is embodied in Joint Exhibit 1.
6. On April 7, 2000, Horizon purchased the subject property from Indian Corner for the price of $50,000 for each lot. This event is hereinafter referenced as "the closing". Horizon also executed four separate mortgage deeds in favor of Indian Corner, securing the Promissory Note. The mortgages were signed at the closing.
7. Each mortgage referenced one of the four lots. They each indicated that they were securing "$5,000 and contractual agreements between the Mortgagor and Mortgagee herein."
8. The Purchase Agreement was also signed at the closing. It was drafted by the attorney for the seller and had not been reviewed by the attorney for Horizon.
9. Horizon was not represented by an attorney at the closing.[1]
10. In an Addendum to the Purchase Agreement, Indian Corner agrees to complete certain plantings on the subject property for an agreed cost. The design of the structures and location of the trees and plantings were of importance to Indian Corner, as the lots bordered on a farm owned by the Schartner family.
11. Another provision of this addendum states in part:
 In the event any house built on the land conveyed, shall be sold by buyer, its agents, servants, employees or assignees, for a selling price of greater than $200,000, it is agreed that seller shall receive 25% of the gross sale price less the original per lot cost as defined in the Purchase and Sales Agreement.
12. This Addendum provision indicates that some of its provisions survive the closing and "shall be in full force and effect until performed in full."
13. The trees and shrubbery were not planted prior to the closing, or prior to April 14, 2000, (the date referenced in the Agreement) as the parties disagreed on where they should be placed. On April 19, Horizon decided on the location of the plantings, and by May 5, Indian Corner planted 119 trees and 66 shrubs on the subject property.
14. Horizon owned the subject property until June 7, 2000, when it sold the property to DeBlois Building Company ("DeBlois") for $66,000 per lot.
15. Prior to the sale to DeBlois, Horizon requested that Indian Corner release the four mortgages. Indian Corner refused to do so. Horizon then sent Indian Corner a letter asking that the mortgages be discharged, together with a check for $20,000. Indian Corner then released the four mortgages.
16. After the sale to DeBlois, Indian Corner believed it had planted only ninety percent (90%) of the agreed plantings. No additional plantings were completed as DeBlois did not desire them.
 II. TRAVEL
Horizon initiated this action in July 2000, alleging that Indian Corner had breached its contract. Indian Corner answered and counterclaimed for breach of the contract and fraudulent inducement. In August of 2000, a prejudgment attachment was entered by agreement.
 III. CONCLUSIONS OF LAW AND ANALYSIS
The parties to this action are contesting whether the language of the Purchase and Sales Agreement is still binding, and specifically whether Horizon owed Indian Corner additional funds at the sale of the property to DeBlois. While Horizon never constructed the homes, the Purchase and Sales Agreement anticipated that Horizon would develop the four properties and sell completed residential units. This court is therefore called upon to construe the applicability of the Purchase and Sales Agreement to the new situation.
A. The closing
Horizon argues that it went to the closing without counsel, and hence it should be held to a lower standard. Horizon does not deny that it reviewed documents prior to the closing. It had an opportunity to bring counsel to closing, and it could refuse to close at that time. All of the documents were drafted by the attorney for Indian Corner. These are risks which Horizon assumed and do not allow Horizon to simply avoid the express obligations. "The usual rule is that if there is no fraud, duress, or mutual mistake, one who has the capacity to understand a written document, who reads and signs it, or without reading it or having it read to him, signs it, is bound by his signature as to all of its terms." Westerly Hospital v. Higgins, 106 R.I. 155, 160,256 A.2d 506 (1969). Although contracts are generally construed against the drafter if an ambiguity is found, A.C. Beals Companyv. Rhode Island Hospital, 110 R.I. 275, 292 A. 865, 872 (1972), this court finds no ambiguity which could have led Horizon to believe it was signing something other than the obligations it voluntarily undertook with Indian Corner.
In most situations, Purchase and Sales Agreements are drafted prior to the closing, allow the parties to agree on the terms of the sale, obtain financing, review the title and satisfy other contingencies. Thereafter, the closing takes place where the deed is conveyed pursuant to the terms of the Agreement. At many closings, the Purchase and Sales Agreements merge into the closing documents, and cease to be binding. See Russo v.Cedrone, 118 R.I. 549, 375 A.2d 906, 910 (1977). The Agreement between Horizon and Indian Corner was quite different. Not only was the Agreement signed at the closing, but the Addendum explicitly states that certain provisions would survive the closing. (Exhibit A, Addendum).
Accordingly, when the parties left the closing table, they continued to be bound by the additional payment provision of the Purchase Agreement, which could not have been performed until the property was resold.
B. The additional payment provision
The Sales Agreement clearly provides that Indian Corner receives additional proceeds if Horizon sells homes.
Horizon alleges that its conveyance to DeBlois was a sale, not an assignment, so the sales formula addenda and the mortgages "had no force and effect" (Plaintiff's Memorandum, pp. 6-7). Horizon did not supply support for this claim. The clear language of the provision states that it applies to sales "by buyer, its agents . . . or assigns" after any house is built. By its own words, it is not limited to instances where Horizon constructed a house.
In a recent case, our high court recently reviewed the standards for contract interpretation, emphasizing that language should be given its ordinary meaning:
 When "interpreting the contested terms of [an] insurance policy, we are bound by the rules established for the construction of contracts generally." Malo v. Aetna Casualty and Surety Co., 459 A.2d 954, 956 (R.I. 1983). The terms used must be given their plain and ordinary meaning, and the test to be applied is not what the insurer intended, but what the ordinary reader and purchaser would understand them to mean. See Campbell v. Norfolk Dedham Mutual Fire Insurance Co., 682 A.2d 933, 935 (R.I. 1996). "We have consistently held that a contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." Rotelli v. Catanzaro, 686 A.2d 91, 94 (R.I. 1996). If the terms are found to be unambiguous, however, the task of judicial construction is at an end and the parties are bound by the plain and ordinary meaning of the terms of the contract. Malo, 459 A.2d at 956. Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249, 1259 (R.I. 2003).
The Purchase Agreement clearly provides that Indian Corner receives additional proceeds if Horizon sells homes at a significant profit.[2] This language was advantageous for each party: Horizon could reduce some of its original purchase price and control costs by sharing the risk in the venture. Indian Corner, believing that the developed property would be valuable, could receive a share of the profit without developing the land, and after receiving the initial proceeds at closing. This language was contemplated, bargained and negotiated between the parties. This language was contained in the Purchase and Sales Agreement signed at the closing and was binding upon the parties.
Horizon was free to sell the property to another party, and did so. Because there were no houses constructed at the time of this sale, Horizon was not obligated to pay the additional proceeds at that time. However, Indian Corner kept a trump card in its hand, for it obtained executed mortgages on the lots to ensure the provisions of the Purchase Agreement would be enforced. As those mortgages were recorded, the obligations would (in some part) encumber the land As a result of these mortgages, Indian Corner ensured that it would be paid, or dealt with, at any subsequent sale.
Indian Corner's mortgage deeds proved their value. When Horizon decided to sell the property to another developer just two months later, the issue returned. The new buyer discovered the broad mortgage language, and raised the issue as a title concern prior to closing. This forced Horizon to resolve the issue. Indian Corner was apprised and brought to the negotiating table. A new bargain was struck to resolve the controversy, wherein Horizon agreed to pay $20,000 in return for Indian Corner's release of the mortgages. Horizon paid. This new Agreement is binding. A contractual relationship can be altered or modified by the mutual agreement of the parties, supported by consideration. Angel v.Murray, 113 R.I. 482, 492, 322 A.2d 630, 636 (1974). Seealso Fondedile S.A. v. C.E. Maguire, 610 A.2d 87, 92 (R.I., 1992).
Horizon proffers that the court should now rework the settlement because Horizon never built a house and its conveyances applied only to assignees. Had Horizon desired to contest the language in court at the time it could have requested immediate relief, or reserved its rights. It did not do so, but chose to strike a new bargain. The doctrine of accord and satisfaction provides that when two parties agree to give and accept something in satisfaction of a right of action which one has against the other, and that agreement is performed, the right of the action is subsequently extinguished. See Lamoureaux v.Merrimack Mutual Fire Insurance Co, 751 A.2d 1290, 1293 (R.I. 2000), citing Kottis v. Cerillli, 612 A.2d 661, 664 (R.I., 1992).
C. The landscaping.
Horizon's complaint charges that Indian Corner failed to complete the agreed upon landscaping and buffer planting. On direct examination, Horizon's principal claimed he was surprised when a landscape payment was required at closing, and testified that minimal landscaping was completed. Mr. Schartner's testimony, backed up by extensive photographs, was more thorough, plausible and credible. Trained as an engineer, Mr. Schartner was meticulous in his dealings with Horizon. He maintained written notes of his communications with Horizon.
Mr. Schartner attributed the delay to Horizon's indecision in where to place the trees. However, within days of the contractual deadline, shrubs were planted, 119 trees were planted and shrubs were moved and replanted. Even after the property was sold by Horizon, Mr. Schartner offered to plant additional trees for the new owner. After expressing satisfaction for the completed plantings, the new owner refused the offer. Accordingly, Indian Corner met its contractual obligations to perform landscaping and buffer planting, and was not unjustly enriched.[3] Judgment may enter for the Defendant on Counts One and Two.
D. Covenant of Good Faith.
In Count Three, Horizon alleges Indian Corner breached its covenants of good faith and fair dealing by failing to discharge the mortgages. As discussed above, the mortgages were a security for enforcing the agreement which allowed Indian Corner a profit after the houses were built. The mortgages were discharged before the houses were built. While "virtually every contract contains an implied contract of good faith and fair dealing", CentervilleBuilders, Inc. v. Wynne, 683 A.2d 1340, 1342 (R.I., 1996), the covenant is so the contractual objectives may be achieved. IdeFarm Stable v. Cardi, 110 R.I. 735, 739, 297 A.2d 643, 645 (1972). Indian Corner had no obligation to discharge the duty, absent receiving payment and, accordingly, did not violate the implied covenants. See Dovenmuehle Mortgage, Inc. v.Antonelli, 790 A.2d 1113, 1115 (R.I., 2002).
Count Four alleges that Horizon's payments to Indian Corner totaling $20,000 (for the four $5000 mortgages) constituted unjust enrichment. As stated, these terms were previously negotiated and agreed to. The $20,000 was the original mortgage value, as consented by Horizon. Such a payment is reasonable and constituted the contract. These payments were not unjust.
 IV. CONCLUSION
Judgment shall enter for the defendant on all counts. The prejudgment attachment is vacated and quashed. Counsel for Defendant shall prepare an appropriate Judgment.
 CERTIFICATION I hereby certify that a true copy of the foregoing documentwas mailed, postage prepaid, to, James Moretti, Esq., 600Reservoir Avenue, Cranston, RI and Robert E. Allen, Esq., P.O.Box 272, Middleboro, MA on February 29th, 2004.
[EDITORS' NOTE: SIGNATURE IS ELECTRONICALLY NON-TRANSFERRABLE.]
CAROL M. SZYMANSKI
[1] While Horizon indicated that it had not seen the Purchase Agreement prior to the closing on April 7, 2000, it had delivered a computer internet transmission (an e-mail) to Indian Corner on March 31, 2000, indicating that the Agreement was acceptable.
[2] On cross examination, Mr. Pearson acknowledged that Horizon anticipated sharing some of its profit in the lot sales with Indian Corner.
[3] Recovery for unjust enrichment may not be available where there is an express contract. See Camp Creek Hospitality Inns,Inc. V. Sharaton Franchise, 939 F.2d 1396, 1413 (C.A. 11, 1998).