**Mary M. KURCZY, Individually and as Parent and Next Friend of Lucas Landry, a Minor**

v.

**ST. JOSEPH VETERANS ASSOCIATION, INC.**

No. 97–9–Appeal.

Supreme Court of Rhode Island.

June 16, 1998.

---

Ronald J. Resmini, Barrington, Paul S. Cantor, Providence, for Plaintiff.

Joseph C. Salvadore, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This case came before the Court on the cross-appeals of the parties. The plaintiff, Mary M. Kurczy (Kurczy),[1] appeals from the denial in the Superior Court of her motion for judgment as a matter of law and her motion for a new trial. The defendant, St. Joseph Veterans Association, Inc. (association), appeals from the Superior Court's denial, in part, of its motion for recovery of costs.

On May 19, 1990, Lucas Landry (Lucas), who was then eight years of age, attended his grandmother's wedding reception, which was being held at the association's facility in Woonsocket, Rhode Island. Also attending that wedding was another young child, eight-year-old Kerri Hamelin (Kerri). During the course of the festivities, young Lucas and Kerri engaged in the usual children's play while their seniors reveled in the spirit of the occasion. At about ten in the evening Lucas and Kerri left the reception room and went out into the front yard of the building. Despite the night's darkness the building's front entrance was illuminated by an overhead light, and light from a window in the coatroom adjacent to the front entrance also helped to brighten the front-entrance area. Lucas and Kerri, once in the front-yard area, then began tapping on the coatroom window and, once having done so, attempted to conceal themselves in the darkness to avoid being seen by whoever of the guests inside the building might respond to their playful window tapping. After so playing, young Lucas went toward the south-side corner of the building. As he turned the corner of the building, he called to Kerri to "come on" and follow him. When Kerri turned the corner of the building, she was confronted by a slightly raised cement landing leading into a darkened steep concrete stairwell with a metal pipe railing.[2] Lucas, however, was nowhere to be found. Kerri described the steep stairwell as "black as [her] hair." She then, while looking at the dark, unlit stairwell, was unable to see its bottom but heard what she recalled as a "sickly sound" like a "moaning dog" emanating from the bottom of the stairwell. When Lucas failed to respond to her calls, Kerri returned to the reception room where the rest of the wedding guests were still enjoying the festive occasion. Kerri ran to her mother and Lucas's mother, Kurczy, both sitting at the same table, and told them that she could not find Lucas. Both mothers assumed that Lucas was intentionally hiding and were not initially concerned about his disappearance. However, when Kerri was still not able to find Lucas after searching further, Lucas's aunt, Jacqueline Vitiello, along with Kurczy and Kerri's mother, joined in the search. A friend of Kurczy's, Jack Staelen (Staelen), also helped search for Lucas.

When Kurczy went outside, she went to the stairwell where Kerri had last seen Lucas. Staelen came over to her, and they both heard moaning from the bottom of the stairwell. Using his cigarette lighter to light his way as he went down the dark stairwell to investigate the source of the moaning sound, Staelen stumbled upon Lucas lying at the base of the stairwell, crumpled, bloodied, and covered with leaves and mud. At the sound of his name Lucas only produced nonresponsive moaning.

Staelen carried Lucas's limp body into the function-hall coatroom and placed him on a table. Staelen then turned his attention to Kurczy, who was understandably hysterical. An ambulance was summoned, and Lucas was taken to Rhode Island Hospital where he remained for eight days in a coma in the intensive-care unit. He next remained another two weeks in the hospital's recovery unit and then spent a third week at Landmark Medical Center[3] for rehabilitation. When he finally arrived home, his speech was somewhat slurred and he was no longer as physically active as he had been before the

---

1. Lucas's mother is now known as Mary Jolin, but for the purposes of this opinion we will still refer to her as Kurczy.

2. The photograph of the elevated stairwell landing slab that immediately abuts the concrete stairwell opening is depicted in the plaintiff's photographic exhibits.

3. Landmark Medical Center was formerly known as Fogarty Hospital, and Kurczy during her testimony refers to it as such.

accident because of lingering weakness on the left side of his body.

On January 3, 1992, Kurczy filed a complaint, alleging damages arising from the association's negligent maintenance of its premises.[4] The association asserted in response that the concrete stairwell did not create a dangerous condition and that there was no evidence establishing the fact that the failure to warn of the stairwell or otherwise to remedy the allegedly dangerous condition was in any way the proximate cause of the injuries sustained by Lucas. After a jury trial the jury concluded in response to specific interrogatories that the unlighted stairwell did create a dangerous condition, that the association knew or should have known of its existence, and that the association was negligent in failing to remedy or adequately warn of the dangerous condition. Despite those findings, however, the jury then concluded that the association's negligence was not the proximate cause of Lucas's injuries and returned a verdict for the association. The trial justice thereafter denied Kurczy's renewed motion for judgment as a matter of law and her motion for a new trial. The trial justice also denied the association's motion for recovery of costs except for the costs associated with Lucas's and Kerri's depositions. Kurczy appealed the denial of her motion for judgment as a matter of law and the denial of her new trial motion. The association appealed the trial justice's denial of its request for costs of pretrial depositions.

■ Kurczy's first claim of error on appeal is that the trial justice erred in denying her motion for judgment as a matter of law. When ruling on Kurczy's motion for judgment as a matter of law made pursuant to Rule 50 of the Superior Court Rules of Civil Procedure, the trial justice explained that the language of the rule, as amended in 1995, prohibited the entry of judgment in favor of the party having the burden of proof on an issue, in this case the plaintiff, Kurczy. We conclude that the trial justice's interpretation of the new language of Rule 50 is erroneous.

Rule 50(a), as amended, provides in pertinent part as follows:

"If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."

There is no language in Rule 50 that limits the ability of a trial justice to enter judgment in favor of either party. All that the rule requires is that a party must be heard on an issue before the court makes a finding against that party. A trial justice can rule in favor of a plaintiff as easily as he or she can rule in favor of a defendant, as long as the party against whom the trial justice is ruling has had an opportunity to be heard on the issue. Since Kurczy's Rule 50 motion had been made initially at the close of the evidence and renewed after entry of the jury's verdict, both parties clearly had been afforded an opportunity to be heard on all the material trial issues, including negligence and proximate cause. Consequently, the trial justice was then free to rule against the association and in favor of Kurczy on those issues. Accordingly, we conclude that the trial justice misconstrued the language of Rule 50 and incorrectly assumed that she was without the authority to rule in favor of the plaintiff Kurczy on her motion for judgment as a matter of law.

■ However, notwithstanding that erroneous interpretation, the trial justice correctly examined the evidence and determined that she did not think "that the plaintiff's evidence on the issue of liability was or is so conclusive that the matter should be taken from the jury and judgment enter as a matter of law. * * * Whether the [plaintiff's] burden had been met or was met at trial was for the finder of fact, and is for the finder of

---

4. An amended complaint was filed on April 3, 1996. The amended complaint was not material-

ly different from the original complaint.

fact. Reasonable minds could differ on the evidence."

The standard of review employed by a trial justice in passing upon a motion for judgment as a matter of law is the same as previously existed for the consideration of a motion for a directed verdict. *K & K Construction, Inc. v. City of Warwick,* 693 A.2d 1038, 1039 n. 4 (R.I.1997) (order). As we have said:

" 'The standard of review on a motion for a directed verdict is well settled: the trial justice, and this Court on review, considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for a directed verdict must be denied, and the issues must be submitted to the jury for determination.' *DeChristofaro v. Machala,* 685 A.2d 258, 262 (R.I.1996)." *A. Teixeira & Co. v. Teixeira,* 699 A.2d 1383, 1390 n. 7 (R.I.1997).

The trial justice properly applied the above standard when she evaluated the facts in this case and correctly determined that the evidence introduced at trial presented issues of fact upon which reasonable minds could differ. Accordingly, we affirm the trial justice's denial of Kurczy's motion for judgment as a matter of law.

Kurczy's next claim of error on appeal is that the trial justice improperly denied her motion for a new trial. We agree.

"On a motion for new trial, 'a trial justice, as he [or she] considers the pros and cons of such a motion, acts as a "super juror" or a "thirteenth juror" in that he [or she] makes an independent appraisal of the evidence in the light of his [or her] charge to the jury. He [or she] can weigh the evidence and assess the witnesses' credibility. He [or she] can reject some evidence and draw inferences which are reasonable in view of the testimony and evidence in the record. After he [or she]

finishes his [or her] sifting of the evidence, the trial justice must make a choice. He [or she] can * * * follow the route designed for times when he [or she] thinks the testimony so evenly balanced that the verdict should not be disturbed, or he [or she] can go the way established for those occasions when his [or her] "superior judgment" tells him [or her] that the verdict is against the preponderance of the evidence and thereby fails to either do justice to the parties or respond to the merits of the controversy. If he [or she] determines that the evidence presented an "evenly balanced-reasonable minds could differ" situation, he [or she] denies the motion. On the other hand, if he [or she] is of the opinion that the verdict is not a proper response to the evidence, he [or she] grants the motion.' *Ruggieri v. Big G Supermarkets, Inc.,* 114 R.I. 211, 215–16, 330 A.2d 810, 812 (1975)." *State v. Doctor,* 690 A.2d 321, 329 (R.I.1997). *See also Barbato v. Epstein,* 97 R.I. 191, 193–96, 196 A.2d 836, 837–38 (1964).

Our review of a trial justice's denial of a new trial motion is as follows:

"We have said on numerous occasions that if a trial justice reviews the evidence, comments on the weight of the evidence and the credibility of the witnesses, and exercises his [or her] independent judgment, his [or her] determination either granting or denying a motion for new trial will not be disturbed unless he [or she] has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong. *Izen v. Winoker,* 589 A.2d 824, 828–29 (R.I.1991); *Lariviere v. Dayton Safety Ladder Co.,* 525 A.2d 892, 899–900 (R.I.1987); *Barbato v. Epstein,* 97 R.I. 191, 193–96, 196 A.2d 836, 837–38 (1964)." *Pantalone v. Advanced Energy Delivery Systems, Inc.,* 694 A.2d 1213, 1216 (R.I. 1997).

The trial justice correctly noted, when making her ruling on Kurczy's Rule 59 new trial motion, that "[t]he Court sits as a thirteenth juror and exercises the Court's independent judgment in regard to the evidence." She went on to explain that what occurred on the night of May 19, 1990, was a "mystery,

and probably always will remain a mystery." Focusing on the question of whether sufficient lighting had been provided so that someone would have been able to see the open stairwell and whether the lack of such lighting could have been a legal cause of Lucas's fall, the trial justice determined that the evidence did not show by a preponderance thereof that but for the lack of adequate lighting the fall would not have occurred. We conclude that despite reciting the proper standard, the trial justice misconceived material and relevant evidence and was otherwise clearly wrong.[5]

██ No evidence was presented to the jury that could adequately explain how Lucas got to the bottom of the stairwell other than as a result of the association's negligent failure to warn of or remedy the dangerous condition. It is important to note that comparative negligence was not argued by the parties and that the jury was specifically instructed that it was not an issue in this case. Therefore, because Lucas's own behavior could not be blamed for his injuries and there was absolutely no evidence of the existence of any intervention by a third party, the only reasonable explanation for Lucas's injuries was the inherent danger created by the stairwell and the elevated concrete slab leading to the stairway that would be immediately encountered by any person proceeding around the left front corner of the building and into the darkened area. As we have said before, negligence and proximate cause can be established by circumstantial evidence, and specific direct evidence of negligence and proximate cause is not always necessary.

"While it is not possible to rest a case upon mere speculation, yet the plaintiff is not required, in *all* cases, to produce positive and direct evidence of an eyewitness to the alleged negligence. Its negligence may be established by indirect and circumstantial evidence, and by sufficient proof of other facts and circumstances from which such negligence may be fairly and reasonably inferred. Proper inferences from other proven facts, when considered in connection with all of the evidence, may satisfy reasonable minds that they lead to a logical conclusion that the injury resulted from the defendant's negligent acts * * *." *Vrooman v. The Shepard Co.*, 57 R.I. 445, 449, 190 A. 452, 454 (1937). *See also DiGiovanni v. Shaw's Supermarkets, Inc.*, 693 A.2d 1025, 1026 (R.I.1997) (order) ("[a] plaintiff need not eliminate all other possible causes in order to establish by circumstantial evidence the probability of the defendant's negligence").

Therefore, the single fact that no direct proof, that is, eyewitness testimony, existed connecting the dangerous stairwell to Lucas's injuries did not justify the trial justice's characterization of the incident as a "mystery." The association had permitted the dangerous condition to exist on its property and had negligently failed to remedy or to warn persons that it could certainly expect to be on the property of the dangerous condition, and therefore, the association should not be held immune from liability. Having concluded in its verdict-interrogatory response that the stairwell did in fact create a dangerous condition and that the association knew or should have known of that dangerous condition and negligently failed to warn of or to remedy the situation, a jury could not thereafter reasonably reach any conclusion other than that it was the dangerous stairwell condition that was the proximate cause of Lucas's inju-

---

5. Contrary to the trial justice's focus during her ruling on the new trial motion, the parties' focus was not on whether there was adequate lighting. Although evidence was presented regarding the existence of a nonworking light in the stairwell, that evidence was merely intended to show that the association was aware of the potential danger presented by the stairwell and that the association had not adequately remedied that potential danger. Kurczy was not alleging that the inadequate lighting created the dangerous condition or that the association's failure to provide proper lighting was its sole negligent act. In fact Kurc-

zy asserted several potentially dangerous conditions and negligent acts including (1) the stairwell's dangerous design, (2) the existence of a protruding metal grate and drain-pipe extension near the stairs, (3) the stairwell's proximity to the corner of the building, (4) the association's failure to take remedial measures to alleviate the danger, including the failure to illuminate the stairs properly, (5) the association's failure to remove leaves from the steps, (6) the lack of a guardrail or rope around the stairs, and (7) the association's failure to notify invitees of the stairwell's existence.

ries.[6] The jury's failure to reach that conclusion after making its specific findings of negligence warrants a new trial. Likewise, the trial justice, in denying Kurczy's new trial motion, misconceived that material and relevant evidence and was clearly wrong. We therefore remand this case for a new trial. In view of the fact that we are sustaining Kurczy's appeal and are remanding for a new trial, we need not address the association's appeal on the trial justice's determination of costs.

Accordingly, for all the foregoing reasons, we sustain Kurczy's appeal. We deny the Association's appeal. The Superior Court judgment is vacated. The papers in this case are remanded to the Superior Court for a new trial.

---

**6.** We note that landowners have a duty of reasonable care that must be exercised with respect to invitees, which Lucas was. *See Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127 (1975). Although *Mariorenzi* was overruled in regard to trespassers, the rule it set forth for invitees and licensees was left unchanged. *See Tantimonico v. Allendale Mutual Insurance Co.,* 637 A.2d 1056, 1061–62 (R.I.1994).