[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Following a five-day jury trial resulting in a verdict for the plaintiffs on July 20, 2005, the defendants, Edward H. Belisle and Jacqueline A. Belisle, renewed their motion for judgment as a matter of law and further moved the Court for a new trial. The plaintiffs, Scott A. Caseau and Susan E. Caseau, have moved the Court for an additur and for an award of costs and witness fees.
 Facts and Travel
The matter before the Court is a dispute arising from the sale of real estate from defendants-sellers to plaintiffs-buyers. The plaintiffs initially brought a thirteen-count complaint against the Belisles, Margarite Jacob, J.W. Riker d/b/a Dewolfe Companies, Inc., J.W. Riker — Northern R.I., Inc., and Dewolfe Realty, Inc. After three years of pretrial motions and discovery, the plaintiff reached a settlement with all of the defendants but the Belisles. A third party action against the Belisles' insurer was disposed of by way of summary judgment. In light of these and other developments, the plaintiffs sought and were granted leave to amend their complaint in June of 2005.
In their amended complaint, the plaintiffs allege that in January or February of 2001, they executed a purchase and sale agreement wherein they agreed to buy and defendants agreed to sell a piece of residential property located at 191 Douglas Pike, North Smithfield, Rhode Island, for $179,000. Following the closing in March of 2001, the plaintiffs allege that the snow accumulation that had shrouded the four acre property since they had first viewed it began to melt, revealing "tires, solid waste, other debris and/or hazardous wastes sticking up from the ground, buried, partially buried, and on the surface of the property" as well as oil-impacted materials and soil. As a result of the tires and other waste on the property, the plaintiffs allege that they suffered economic losses, diminution of value of the property, receipt of non-marketable title, and additional costs and expenses. The Caseaus allege that the Belisles: (1) had actual or constructive knowledge of the condition of the property; (2) and/or buried or disposed of the debris themselves; (3) had a duty to discover and/or disclose the condition of the property to the defendants, and failed to do so; (4) did not, when asked what was under the snow, disclose the presence of the debris; and (5) failed to disclose the condition of the property on the real estate disclosure forms.
The plaintiffs advanced several theories of liability, including negligence, breach of contract, fraud and/or misrepresentation, conversion, and unjust enrichment.[1] They sought rescission of the purchase and sale agreement, return of the purchase price, and compensatory damages covering the costs of removing the debris, remediation, the diminution of the property's value, and carrying costs, along with costs, fees, and punitive damages. The defendants denied all allegations.
At the close of the plaintiffs' evidence, the defendants moved for judgment as a matter of law. After entertaining argument on the motion, the Court reserved judgment and herein rules on the defendants' renewed motion. The Court will also address the defendants' request for a new trial, as well as the plaintiffs' motions for additur, costs and witness fees.
 The Defendants' Renewed Motion for Judgment as a Matter of Law
A judgment as a matter of law may be granted if, after trial to a jury, "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Super. R. Civ. P. 50(1). The Court, in reviewing a motion for a judgment as a matter of law, must "consider the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party." Kurczy v. St. Joseph Veterans Ass'n, 713 A.2d 766, 770
(R.I. 1998). If factual issues upon which reasonable persons might draw different conclusions remain, the motion must be denied. Id. The Court will apply this standard to each of the defendants' claims in turn.
 The Negligence Claim
In an action for negligence, the plaintiff bears the burden of establishing that the defendant "breached a duty of care owed to the plaintiff and this breach proximately caused an injury to the plaintiff resulting in actual damages." Lutz Engineering Co. v. IndustrialLouvers, Inc., 585 A.2d 631, 635 (R.I. 1991). The defendants argue that the plaintiffs have not established that the defendants owed them a duty of care independent of their contractual duties.
The existence of a legal duty is a question of law to be determined by the Court. Martin v. Marciano, 871 A.2d 911, 915 (R.I. 2005) (citingVolpe v. Gallagher, 821 A.2d 699, 705 (R.I. 2003)). The Court must make the determination on a case-by-case basis, considering "all relevant factors, including the relationship between the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and the foreseeability of harm to the plaintiff." Id.
(citations omitted). If the Court determines as a matter of law that no duty exists, inquiry ceases. See, e.g., Thanadbouth v. Kongmany,712 A.2d 879, 880 (R.I. 1998) (affirming summary judgment for defendant where motion justice found that defendant owed plaintiff no duty as a matter of law).
Duty, as it relates to real estate transactions, frequently involves application of the common law doctrine of caveat emptor, i.e., buyer beware. See Hydro-Manufacturing v. Kayser-Roth Corp., 640 A.2d 950, 955-56
(R.I. 1994); see also Caryl A. Yzenbaard, Residential Real EstateTransactions § 1.7, at 8 (1991) (noting most courts and legislatures continue to apply to the doctrine in residential real estate transactions, reasoning that the purchaser is in as good a position as the seller to ascertain the condition of the property). But see Shapirov. Sutherland, 64 Cal. App. 4th 1534, 1544 (Cal.Ct.App. 1998) (stating that "[g]enerally, where one party to a [real estate] transaction has sole knowledge or access to material facts and knows that such facts are not known or reasonably discoverable by the other party, then a duty to disclose exists"). As a result of Rhode Island's adherence to the caveat emptor principle, in most circumstances, any duty imparted upon a seller in an arm's length real estate transaction must be established via contract and not by operation of law. Hydro-Manufacturing, 640 A.2d at 955
(citing Philadelphia Electric Co. v. Hercules, Inc., 762 F.2d 303, 312 (3d Cir.), cert. denied, 474 U.S. 980, 106 S. Ct. 384, 88 L. Ed. 2d. 387 (1985) (citation omitted). The Hydro-Manufacturing Court justified this notion as follows:
 "A buyer has the option to inspect the property and inquire into possible defects prior to purchase. A seller who does not answer truthfully is liable in an action for misrepresentation. A buyer concerned with the truthfulness of the seller's answer or possible future liability resulting from a prior owner's actions can seek a reduction in the sale price, seek indemnity from the seller (through a warranty), or walk away from the sale. A buyer, then, under an affirmative duty to inspect the land and make reasonable inquiry, can negotiate a selling price that reflects the land's actual, economic value." Id. at 955-56 (citing Wilson Auto Enterprises, Inc. v. Mobil Oil Corp., 778 F. Supp. 101, 105
(D.R.I. 1991) (emphasis added).
The plaintiffs in the case at bar were in a position to protect themselves through contract or by choosing not to proceed with the transaction. See Hydro-Manufacturing, 640 A.2d at 956. The defendants were under no duty to conduct inspections for the plaintiffs' benefit. The defendants, as vendors, had a duty to disclose only "abnormally dangerous" conditions, i.e., defects that they knew, or should have known, would pose an unreasonable risk of harm to others. Id. at 958-59 (citing G.L. 1956 § 5-20.8-2). However, a review of the evidence reveals that while tires and other debris were found on the property, the plaintiffs made no showing that the condition of the property created an unreasonable risk of harm to them. In fact, the parties stipulated that no "hazardous" waste was at issue. The plaintiffs have lived on the property, without incident, for approximately four years. Before them, the defendants lived there for approximately twenty years, using the immediate area for play, family gatherings, and recreation.
In arguing that a duty was owed them, the plaintiffs rely on the Rhode Island Supreme Court's holding in Stebbins v. Wells, 818 A.2d 711 (R.I. 2003), wherein the court held that chapters 20.8 and 20.6 of title 5 create a duty on the part of a real estate agent to disclose material defects to potential buyers when such defects are within the agent's personal knowledge and the agent knows, or should know, that the buyer is "acting under a misapprehension concerning facts which would be important to the buyer and could probably affect its decision." Id. at 719. TheStebbins holding, however, concerns the relationship between a real estate agent and a buyer, not a seller and a buyer; indeed, chapter 20.6 relates solely to the agency relationship. See generally § 5-20.6 (section entitled "Agency Relationships in Residential Real Estate Transactions"). Furthermore, the narrow language of the decision indicates that the Stebbins Court contemplated the imposition of a duty only where the relationship contained an element of reliance on the part of the buyer — a notion that is antithetical to the entrenched doctrine of caveat emptor in arm's length real estate transactions.
Because this Court finds Stebbins to be factually and legally distinguishable from the instant matter, and because there are no circumstances warranting the application or creation of an exception to the common law doctrine of caveat emptor, the Court concludes that the defendant sellers owed no common law duty of care to the plaintiffs with respect to disclosing non-hazardous defects in the property. As noted by our Supreme Court in Hydro-Manufacturing, the buyers here would be required to prove a case of misrepresentation in order to recover for the sellers' failure to disclose the existing state of the property.640 A.2d at 955-56. Accordingly, with respect to plaintiffs' negligence claim, the defendants' renewed motion for judgment as a matter of law must be granted.
 The Breach of Contract Claim
The defendants next argue that, as a matter of law, the Caseaus' claim for breach of contract must fail because the plaintiffs have not proven, or even alleged, actions on the part of the defendants that would amount to a breach of contract. In their amended complaint, the plaintiffs assert that they and the Belisles entered into a series of agreements, including but not limited to, a purchase and sale agreement and a real estate disclosure form, which formed the contractual terms of the sale of the property. In particular, they assert that the real estate disclosure form signed by the Belisles indicated that there was no hazardous waste on the property and the "miscellaneous comments" section of the form was intentionally left blank.[2]
Standing alone, the real estate disclosure form is not a contract. It is a statutorily mandated form, and therefore not the result of a bargained-for exchange. The required elements for contract formation, i.e., offer, acceptance, consideration, and mutuality of obligation, are not present. See Filippi v. Filippi, 818 A.2d 608 (R.I. 2003). Although statements in the form might establish the basis for a fraud or misrepresentation action (discussed infra), they do not constitute contractual promises. Furthermore, none of the representations made in the disclosure form were incorporated into the purchase and sale agreement or other contracts between the parties.
While § 5-20.8-2 does mandate the seller of real estate to deliver, prior to execution of the purchase and sale agreement, a written disclosure to the prospective buyer itemizing all known deficient conditions on the subject property, the statute specifically notes that the disclosure statement is not a warranty that no deficient conditions exist. Section 5-20.8-2(b)(1). The statute further provides that "the buyer is advised not to rely solely upon the representation of the seller made in this disclosure, but to conduct any inspections or investigations which the buyer deems to be necessary to protect his or her best interest," and that "[n]othing contained in this section shall be construed to impose an affirmative duty on the seller to conduct inspections as to the condition of this real estate." Id. In addition, as noted above, there is no private right of action arising from the disclosure statute. The only remedies provided to a buyer for failure to disclose are as follows:
 "(a) If prior to the execution of an agreement to transfer, but after the seller has agreed to the buyer's offer, the buyer discovers that a materially deficient condition exists which has not been disclosed to the buyer, then the seller's response to the buyer's offer is deemed to be a counter offer which the buyer may either accept or reject.
 "(b) If prior to closing but after execution of an agreement to transfer, the buyer discovers that a materially deficient condition exists which has not been disclosed to the buyer, then the buyer may either elect to:
 "(1) Terminate the agreement to transfer in which case the buyer shall receive all deposits paid by the buyer to the seller or his or her agent pursuant to the agreement; or
 "(2) Allow the seller the opportunity to cure such deficient condition. . . ." Section 5-20.8-4.
The Court is satisfied that the legislature intended the disclosure form to affect the negotiations and dealings of the parties to a real estate transaction only up to the closing. With regard to disputes over undisclosed deficient conditions arising after closing, the statute is silent, leaving such issues within the purview of the common law. Accordingly, because the Court does not view the disclosure form as a contract, a claim for violation of its terms cannot sound in contract law.
Likewise, to the extent that the plaintiffs rely on the purchase and sale agreement, their claim for breach of contract must also fail. "The doctrine of merger by deed provides that once a warranty deed is accepted it `becomes the final statement of the agreement between the parties and nullifies all provisions of the purchase-and-sale agreement.'" Lizottev. Mitchell, 771 A.2d 884, 887 (R.I. 2001) (quoting Haronian v.Quattrocchi, 653 A.2d 729, 720 (R.I. 1995)). Because the parties proceeded to a final closing, any potential contract claims are now barred by the doctrine of merger by deed. Id. at 887-88. Neither rescission nor damages for breach of the purchase and sale agreement are available to the plaintiffs, and judgment as a matter of law must be granted to the defendants on the breach of contract claim. See id. (upholding summary judgment in favor of defendants where plaintiffs accepted a warranty deed, waiving contractual contingencies in the purchase and sale agreement because contractual claims were barred by the doctrine of merger by deed); Deschane v. Greene, 495 A.2d 227, 229 (R.I. 1985).
For the aforementioned reasons, the defendants' renewed motion for judgment as a matter of law pertaining to the plaintiffs' breach of contract claim must be granted.
 The Fraud or Misrepresentation Claim
While the doctrine of merger by deed precludes plaintiffs' breach of contract claim in this instance, the same cannot be said for its fraud or misrepresentation claim. Merger by deed does not apply where a party was induced by fraud or misrepresentation to enter into a contract for the purchase and sale of real property. Russo v. Cedrone, 118 R.I. 549, 557,375 A.2d 906, 910 (1977).
The Caseaus predicated their misrepresentation claim on a number of facts, and presented evidence at trial in support thereof. The defendants signed a disclosure form indicating that there was no hazardous waste on the property, and they also did not reveal the presence of buried tires in the miscellaneous comments section of that form. Furthermore, the plaintiffs testified that during at least one inspection of the property by the plaintiffs prior to the execution of the purchase and sale agreement, the Caseaus asked the Belisles what lay beneath the snow that covered the yard and the Belisles did not inform them of the tires and other debris on the property, but instead told them that the snow covered sod. Additionally, the plaintiffs testified that they asked the Belisles whether anything was buried under a shrine to the Blessed Virgin that was situated on the property — apparently imagining that there might be a pet buried there — to which the Belisles replied that nothing was buried there.[3]
Our Supreme Court has held that "if one is induced to enter into a contract based upon a fraudulent statement from the other party to the contract, then the party who has been fraudulently induced is not bound by the contract." Bjartmarz v. Pinnacle Real Estate Tax Svc., 771 A.2d 124,127 (R.I. 2001). In such a case, the injured party may either rescind the contract or affirm it and sue for damages in an action for deceit.McGovern v. Crossley, 477 A.2d 101 (R.I. 1984); Bloomberg v. Pugh Bros.Co., 45 R.I. 360, 364, 121 A. 430, 431 (1923). To establish a claim for fraud, a plaintiff has the burden of demonstrating by a preponderance of evidence that the defendant "made a false representation intending thereby to induce plaintiff to rely thereon" and that the plaintiff's justifiable reliance on the false representation caused the plaintiff damage. Travers v. Spidell, 682 A.2d 471, 472-73 (R.I. 1996) (quotingCliftex Clothing Co. v. DiSanto, 88 R.I. 338, 344, 148 A.2d 273, 275
(1959)). Parol evidence is admissible to prove fraud in the inducement of a contract. Carlsten v. Oscar Gruss Son, Inc., 853 A.2d 1191, 1195-96
(R.I. 2004).
After reviewing the evidence presented by the plaintiffs, the Court concludes that they have demonstrated the existence of a factual dispute on their claim of fraud or misrepresentation upon which reasonable persons might draw differing conclusions. This claim, therefore, remains viable and the defendants' renewed motion for judgment as a matter of law is denied. The plaintiffs have testified to several affirmative representations made by the defendants that the plaintiffs could have interpreted as assurances that no tires or other debris were buried or otherwise present on the property. Although this testimony was disputed, the Court must view the evidence in a light most favorable to the plaintiffs. The Caseaus also testified at trial that they relied on these statements, and that the defendants' assurances contributed to their decision to purchase the property. Further, viewing the plaintiffs' evidence in a light favorable to their claims, and resolving inferences in their favor, the Court finds that a jury could have inferred that the defendants made the claimed assurances in order to induce the plaintiffs to proceed with their purchase of the property, and could reasonably have found that the plaintiffs were justified in relying on the defendants' representations.
As the plaintiffs did present evidence that could support each element of their claim, the defendants' renewed motion for judgment as a matter of law on the issue of fraud and/or misrepresentation must be denied.See Kooloian v. Suburban Land Co., 873 A.2d 95, 99 (R.I. 2005).
 The Unjust Enrichment Claim
The Court next considers the Caseaus' claim that the defendants have been unjustly enriched. Unjust enrichment is an independent cause of action designed to remedy "[t]he retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected." Black's Law Dictionary 1536 (7th ed. 1999). The theory is generally applied in situations where one party retains a benefit from another without appropriate payment, and no contract between them exists. Doe v. Burkland, 808 A.2d 1090, 1095 (R.I. 2002). The remedy for unjust enrichment is restitution; the measure of a defendant's gain rather than a plaintiff's loss. Id.
The case before the Court, however, does not involve the defendants retaining a benefit without compensating the plaintiffs. Rather, the case involves the payment of a bargained-for sum of money in exchange for a particular piece of property. Because the plaintiffs paid the amount they contractually agreed to pay, and received the property they had contracted to buy, no action for unjust enrichment can lie. The Court has no equitable power to correct what the plaintiffs, in hindsight, now believe to be a bad bargain. See generally Andrew Kull, RationalizingRestitution, 83 Calif. L. Rev. 1191, 1204 (1995). The defendants' motion for judgment as a matter of law on the claim of unjust enrichment must be granted.
 The Defendants' Motion for a New Trial
As grounds for their new trial motion, the defendants assert two arguments. First, that the jury's verdict is against the weight of the evidence, fails to do substantial justice, and is affected by error of law. Because this Court has determined that the defendants are entitled to judgment as a matter of law on the negligence, breach of contract and unjust enrichment claims (see supra), it need only concern itself with whether the defendants are entitled to a new trial with respect to the fraud or misrepresentation claim. Second, the defendants argue that the Caseaus failed to prove the correct measure of damages. While the plaintiffs presented evidence as to what it would cost them to clean up the property — a cost far exceeding the original purchase price of the property — the Belisles maintain that the proper measure of damages, given the circumstances, is the diminution in value of the property purchased by the plaintiffs.
Pursuant to Rule 59 of the Superior Court Rules of Civil Procedure, a new trial may be granted "in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted." In reviewing a motion for a new trial, the trial justice sits as an extra juror and must "independently weigh, evaluate and assess the credibility of the trial witnesses and evidence." Graff v. Motta, 748 A.2d 249, 255 (R.I. 2000). If the Court determines that the evidence is balanced or is such that reasonable jurors, considering the same evidence, might come to different conclusions, the court must uphold the jury's verdict. Id. Only where the jury's verdict fails to respond truly to the merits of the controversy, does not administer substantial justice, or is against the preponderance of the evidence may the Court order a new trial. Galusha v. Carlson,120 R.I. 204, 206, 386 A.2d 634, 635 (R.I. 1978).
 The Fraud or Misrepresentation Claim
To succeed under a fraud or misrepresentation theory, the plaintiffs had to show that the defendants made a false representation, intending thereby to induce the plaintiffs to rely upon that representation, and that the plaintiffs' justifiable reliance on the false representation caused damages. Although this Court, supra, determined that judgment as a matter of law on this particular issue was not proper, the standard governing the granting of a new trial motion is less stringent. Moore'sFederal Practice, § 59.05[5] at 59-19 (3d ed.) (citing Lozapfel v. Townof Newburgh, N.Y., 950 F. Supp. 1267, 1272 (S.D.N.Y. 1997)). The trial court may, in its discretion, grant a new trial even when substantial evidence supports the jury's verdict. Lama v. Borras,16 F.3d 473, 477 (1st Cir. 1994). Further, the court is under no obligation to view evidence in a light most favorable to the non-moving party. Moore's Federal Practice, § 59.05[6] at 59-22 (3d ed.) (citing,inter alia, Bates v. Hensley, 414 F.2d 1006, 1011 (8th Cir. 1969)); seealso White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992).
The plaintiffs' fraud claim is based on four distinct representations made by the defendants: (1) that the property contained no hazardous waste; (2) that no other miscellaneous disclosable conditions existed; (3) that under the snow was sod; and (4) that nothing was buried beneath the statue of the Blessed Virgin. With regard to the first allegation, the Court finds that the plaintiffs presented no credible evidence that any hazardous waste was present. In other words, the plaintiffs failed to show the falsity of the representation.[4] Regarding the defendants' failure to disclose the existence of tires or other debris, whether on the real estate disclosure form or verbally, this Court credits the defendants' testimony that they were not aware of the actual number of tires on the property. Pictures of the property exhibited at trial indicate that the extent of the debris was not ascertainable absent excavation, which the defendants never undertook. Further, the Court credits the defendants' testimony that they did not regard the existence of the few visible tires a deficient condition requiring disclosure. The Court finds no evidentiary support for the plaintiffs' assertion that these omissions amounted to a willful passive concealment of the true condition of the property. Because the Court finds that the great weight of the evidence is against a finding of liability for fraud or misrepresentation, the defendants' motion for a new trial on the merits of this issue must be granted.
 Damages
The defendants maintain that the damages awarded by the jury were wholly speculative and not supported by any evidence. This Court agrees. The only evidence relative to the issues of damages presented by the plaintiffs was an estimate performed by Lincoln Environmental that the removal and disposal of all tires on the property would cost approximately $260,000. The cost of remediation efforts inaccurately quantified the damages in this instance.
It is axiomatic that the "benefit of the bargain" rule is the proper measure of damages in a claim for fraud or misrepresentation; "the difference between the actual value of what the defrauded person received and the value which it would have had if it had been as represented."See, e.g., Bogosian v. Bederman, 823 A.2d 1117, 1119 (R.I. 2003) (awarding one dollar plus costs to successful plaintiffs in a fraudulent misrepresentation action where there was no proof as to the "lost benefit of the bargain, if any"); Bagdasarian v. Gragnon, 31 Cal. 2d 744, 760
(Cal. 1948) (citing McCormick on Damages 448-54 (1935)); S Dev. Co. v.Pima Capital Mgmt. Co., 31 P.3d 123, 136 (Ariz.Ct.App. 2001). To this effect, the plaintiffs' burden on damages in the case at bar was to produce evidence as to the difference between their purchase price and the property's actual value at the time of purchase. The plaintiffs made no such showing.
While damages need not be calculated with mathematical exactitude, they must be based upon reasonable and probable estimates. Rhode IslandTurnpike Auth. and Bridge Auth, v. Bethlehem Steel Corp., 119 R.I. 141,167-68, 379 A.2d 344, 358 (1977); English v. Green, 787 A.2d 1146, 1150
(R.I. 2001) (quoting Dilone v. Anchor Glass Container Corp., 755 A.2d 818,820-21 (R.I. 2000)) ("This court has held that a damage award may be disregarded by the trial justice and a new trial granted . . . if the award demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled"). The jury saw no evidence directing them on the proper standard for recovery of damages in this case. As a result, it is apparent that their award of $103,400 was based on speculation rather than evidence. Because the basis for the jury's award of damages was erroneous and the amount awarded lacked evidentiary support, the defendants' motion for a new trial must be granted on the issue of damages.
 Conclusion
In summary, for the aforementioned reasons, the Court grants the defendants' renewed motion for judgment as a matter of law with respect to the negligence, breach of contract, and unjust enrichment claims. The Court denies the motion as it pertains to the fraud or misrepresentation claim. With respect to the defendants' motion for a new trial, the Court grants the motion on two fronts: the issue of liability on the fraud or misrepresentation claim, and the issue of damages. In light of the Court's grant of a new trial on damages, it need not address the plaintiffs' motions for additur, costs and witness fees at this time.
[1] The plaintiffs later abandoned the conversion claim.
[2] The plaintiffs also allege that the Belisles made certain oral statements regarding the condition of the property, but because the statements were made prior to the execution of the purchase and sale agreement, the parol evidence rule precludes this Court from considering those alleged terms in reviewing whether the defendants are entitled to judgment as a matter of law on the breach of contract claim. Riley v.St. Germain, 723 A.2d 1120, 1122 (R.I. 1999). Although oral modifications of a purchase and sale agreement may be proved by parol evidence, Gillv. Wagner, 813 A.2d 959, 965 (R.I. 2002), oral statements made prior to or at the time of contracting are not admissible to prove that the parties agreed to terms in addition to or different from an integrated agreement.
[3] At trial the plaintiffs' established that numerous tires were buried in and around that location.
[4] Rhode Island's Hazardous Waste Management Act, §§ 23-19.1-1
through 23-19.1-36, defines hazardous waste as follows:
 "[A]ny waste or combination of wastes of a solid, liquid, contained gaseous, or semisolid form which because of its quantity, concentration, or physical, chemical, or infectious characteristics may:
 (A) Cause or significantly contribute to an increase in mortality or an increase in serious irreversible or incapacitating reversible illness; or
 (B) Pose a substantial present or potential hazard to human health or the environment.
 (ii) These wastes include, but are not limited to, those which are toxic, corrosive, flammable, irritants, strong sensitizers, substances which are assimilated or concentrated in and are detrimental to tissue, or which generate pressure through decomposition or chemical reaction. In addition, these wastes include "industrial waste" as the term is used elsewhere, unless the context shall clearly indicate otherwise." Section 23-19.1-4.
The plaintiffs made no showing that the debris found on the property met this definition or presented a danger to them. Indeed, the parties stipulated that no hazardous waste was involved in the instant case (see supra).