Michael BOTELHO

v.

CASTER'S INC. d/b/a Caster's
Bicycles and Fitness.

No. 2007–270–Appeal.

Supreme Court of Rhode Island.

May 15, 2009.

Eugene V. Mollicone, Esq., for Plaintiff.

Randall B. Johnson, Esq., for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Justice ROBINSON for the Court.

This is an appeal arising from a civil suit sounding in negligence that was tried to a jury in the Superior Court for Kent County. After a full trial, instruction by the trial justice, and deliberations, the jury returned a verdict of no negligence on the part of the defendant, Caster's Inc. Michael Botelho (plaintiff) appeals from the Superior Court's denial of (1) his motion for judgment as a matter of law on the issue of his alleged comparative negligence and (2) his motion for a new trial. Mr. Botelho further contends that the trial justice committed prejudicial error by giving multiple improper instructions to the jury; the challenged instructions concern comparative negligence and the duties owed by a plaintiff such as Mr. Botelho as a matter of tort law.

This case was assigned to the continuous argument calendar for full briefing and argument by order of this Court on June 5, 2008. The parties appeared before the Court for oral argument on March, 10, 2009. For the reasons set forth below, we affirm the judgment of the Superior Court.

## Facts and Travel

This case arises out of a bicycle accident which occurred on July 28, 2000. On that date, Michael Botelho visited a bicycle store in Warwick known as Caster's Bicycles and Fitness; that store is owned and operated by Caster's Inc. (Caster's or defendant).

Mr. Botelho was an experienced recreational bicycle rider. He had previously visited Caster's approximately one week to one month prior to the accident in order to inquire about new bicycle equipment. On July 28, he returned to the store and spoke with Adam Sullivan, a salesman employed by Caster's. Specifically, plaintiff expressed his interest in lightweight bicycles with carbon fiber, titanium, or aluminum frames. Mr. Sullivan selected several bicycles, each composed of a different frame material, for plaintiff to test ride. The plaintiff test rode the first three bicycles without incident.

The plaintiff then test rode the Kestrel KM40, which is a lightweight, carbon fiber bicycle. The Kestrel KM40 was designed primarily for triathlon racing, and it is equipped with "aerobars." Aerobars are bicycle handlebars designed to reduce a rider's wind profile; they supplement, but do not replace, the standard handlebars. The aerobars stretch straight forward in front of the rider; padded cups or pads in the middle of the bars support the rider's elbows and/or forearms while the hands are stretched forward to hold the aerobars. This position keeps the rider's elbows close to the body and causes his or her torso to be lower on the bicycle than is the case with the traditional riding position. Additionally, when using the aerobars, the rider is pitched further forward on the bicycle as compared with the position that one assumes on a normal road bicycle. On the Kestrel KM40, the gear-shifting mechanisms are located at the end of the aerobars, while the brakes are located in the typical position on the standard handlebars. Thus, a rider cannot operate the

brakes when his or her hands are located on the aerobars and cannot operate the gear shifting mechanism when his or her hands are on the standard handlebars.

The plaintiff had never previously ridden a bicycle equipped with aerobars. At Mr. Sullivan's suggestion, he took the Kestrel KM40 to test ride it on a street near the shop. The street began to slope downwards at a moderate angle. While proceeding down the hill, plaintiff found himself "freewheeling," meaning that he was going too fast for the gear then engaged and his pedaling could not match the speed of the rear wheel.

It appears that, at that time, Mr. Botelho became confused and either removed his hands from the aerobars or tried to move his hands from the handlebars to the aerobars. In any event, he lost control of the bicycle and was thrown to the ground.[1] As a result of the accident, plaintiff suffered various injuries, including a concussion, a broken and permanently dislocated collarbone, and various other orthopedic injuries.

The plaintiff brought a negligence action against Caster's in the Superior Court for Kent County. The defendant, Caster's, raised the affirmative defense of comparative negligence on plaintiff's part; it was defendant's position that plaintiff was primarily, if not totally, responsible for the accident.[2] The case was tried to a jury over several days between July 11 and July 21, 2006.

On July 21, at the close of all the evidence, the plaintiff moved for judgment as a matter of law on the grounds that defendant had not adduced sufficient evidence to support a jury finding of comparative neg-

ligence on the part of plaintiff. The trial justice denied the motion.

The jury then received its instructions. Over the objection of plaintiff, the trial justice included a jury instruction on comparative negligence. On July 24, 2006, after two days of deliberations, the jury returned a verdict of no negligence on the part of Caster's.

The plaintiff filed a motion for a new trial on July 26, which motion was denied on September 12, 2006. In deciding the motion, the trial justice reviewed the evidence presented at trial, commented on the weight and credibility of the witnesses, and ultimately concluded that reasonable minds could differ as to the parties' relative responsibility for the accident.

Mr. Botelho timely filed an appeal to this Court.

### Standards of Review

### I

### The Standard Relevant to the Motion for Judgment as a Matter of Law

In reviewing a trial justice's denial of judgment as a matter of law pursuant to Rule 50(a)(1) of the Superior Court Rules of Civil Procedure, this Court applies the same standards as did the trial justice. *Marcil v. Kells*, 936 A.2d 208, 212 (R.I. 2007); *see also Mills v. State Sales, Inc.*, 824 A.2d 461, 472 (R.I.2003).

In cases tried to a jury, a party may move for judgment as a matter of law under Rule 50(a)(1) once an opposing party has been fully heard on an issue. *Broadley v. State*, 939 A.2d 1016, 1020 (R.I.2008). The trial justice may grant the motion

---

**1.** There was also some evidence presented that was suggestive of the possibility that Mr. Botelho hit a stone or some other obstruction in the road.

**2.** The defendant explicitly raised comparative negligence as an affirmative defense in its answer to plaintiff's complaint.

upon determining that "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue * * *." Rule 50(a)(1). However, the motion must be denied if there are factual issues concerning which reasonable people may reach differing conclusions. *Trainor v. The Standard Times*, 924 A.2d 766, 769 (R.I.2007). Pursuant to Rule 50, it is the role of the trial justice to evaluate the evidence adduced at trial in the light most favorable to the nonmoving party, without weighing the evidence or passing on the credibility of the witnesses. *Trainor*, 924 A.2d at 769.

## II

### The Standard Relevant to the Jury Instruction

■■■ When giving a jury instruction, "[a] trial justice fulfills his or her obligation to charge the jury properly by framing the issues in such a way that the instructions reasonably set forth all of the propositions of law that relate to material issues of fact which the evidence tends to support." *Morinville v. Old Colony Cooperative Newport National Bank*, 522 A.2d 1218, 1222 (R.I.1987) (internal quotation marks omitted); *see also Riley v. Stone*, 900 A.2d 1087, 1092 (R.I.2006). It is well settled that this Court examines jury instructions "in their entirety to ascertain the manner in which a jury of ordinarily intelligent lay people would have understood them." *Parrella v. Bowling*, 796 A.2d 1091, 1101 (R.I.2002) (internal quotation marks omitted). We do not examine single sentences or selective parts of the charge in isolation; rather, "the challenged portions must be examined in the context in which they were rendered." *Id.* (internal quotation marks omitted). Moreover, even if an instruction is erroneous, reversal is warranted "only if it can be shown that the jury could have been mis-

led to the resultant prejudice of the complaining party." *Hodges v. Brannon*, 707 A.2d 1225, 1228 (R.I.1998); *Anter v. Ambeault*, 104 R.I. 496, 501, 245 A.2d 137, 139 (1968).

## III

### The Standard Relevant to the Motion for New Trial

■■■ In passing on a motion for a new trial, the trial justice acts in a role that we have metaphorically described as being that of "a 'super juror' or a 'thirteenth juror.'" *Kurczy v. St. Joseph Veterans Association, Inc.*, 713 A.2d 766, 770 (R.I.1998) (quoting *State v. Doctor*, 690 A.2d 321, 329 (R.I.1997)). That metaphor makes it clear that the trial justice is to make "an independent appraisal of the evidence in the light of his [or her] charge to the jury." *Kurczy*, 713 A.2d at 770 (internal quotation marks omitted). In making that independent appraisal, the trial justice "can weigh the evidence and assess the witnesses' credibility." *Id.* In addition, he or she "can reject some evidence and draw inferences which are reasonable in view of the testimony and evidence in the record." *Id.*

■■■ If the trial justice determines that the evidence is evenly balanced or is such that reasonable minds in considering the same evidence could come to different conclusions, the trial justice must allow the verdict to stand. *Marcotte v. Harrison*, 443 A.2d 1225, 1232 (R.I.1982); *see also Bajakian v. Erinakes*, 880 A.2d 843, 851 (R.I.2005). If, however, his or her " 'superior judgment' tells [the trial justice] that the verdict is against the preponderance of the evidence and thereby fails to either do justice to the parties or respond to the merits of the controversy," the verdict must be set aside. *Ruggieri v. Big G*

*Supermarkets, Inc.,* 114 R.I. 211, 216, 330 A.2d 810, 812(1975).

If the trial justice has carried out the duties required by Rule 59 of the Superior Court Rules of Civil Procedure and our decided cases, his or her decision is accorded great weight by this Court and will not be disturbed unless the plaintiff "can show that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *International Depository, Inc. v. State,* 603 A.2d 1119, 1123 (R.I.1992) (internal quotation marks omitted); *see also Candido v. University of Rhode Island,* 880 A.2d 853, 857 (R.I.2005); *Pollard v. Hastings,* 862 A.2d 770, 777 (R.I.2004); *Kurczy,* 713 A.2d at 770.

### Analysis

On appeal, Mr. Botelho raises several arguments. First, he contends that the Superior Court erred in denying his motion for judgment as a matter of law on the issue of plaintiff's comparative negligence. Secondly, plaintiff argues that the jury instructions were biased in structure and in presentation in favor of Caster's, Inc.; it is plaintiff's contention that *the order* in which certain topics were addressed in the instructions suggested that plaintiff had the burden of proving his own non-negligent operation of the bicycle at the time of the accident. Finally, Mr. Botelho contends that the Superior Court failed to use the proper analysis in passing upon his motion for a new trial.

### I

### The Motion for Judgment as a Matter of Law

On July 21, after the close of all the evidence, Mr. Botelho's attorney made a motion for judgment as a matter of law on the issue of plaintiff's comparative neg-ligence in causing the accident. He contended that defendant had not introduced sufficient evidence to prove that plaintiff had a duty as a patron of the bicycle shop, negligently breached that duty, or in any way caused the accident.

In denying the motion, the trial justice noted as follows:

> "Credibility is always a jury determination * * *. I think that's the essence of what we have here. We have a witness, we have theories of how [the accident] occurred. Plaintiff's theory is that it occurred because of the bike design. The defense suggests to the contrary, that the accident happened because of negligence by the plaintiff.
>
> "* * * [T]he state of the record is such that the jury could conclude that the accident occurred not because of the bike, but that the accident occurred because the plaintiff hit something in the road. It's going to be up to the jury to sort through these facts and make some determinations as to how the accident occurred, and if the accident occurred, if that loss of control was something that wasn't a situation because of the bicycle, but was an indication because of how the plaintiff was operating it that day."

The quoted language makes clear that the trial justice believed that there were significant factual issues still to be determined by the jury, concerning which issues reasonable persons might reach differing conclusions. As the trial justice expressly noted, there were opposing theories about the circumstances surrounding the bicycle accident.

We agree with the trial justice's assessment. Considering the evidence adduced at trial in the light most favorable to the nonmoving party (Caster's), it is clear that the evidence offered by the parties suggested alternative versions of the events leading up to plaintiff's accident. The trial

justice quite properly ruled that it was "going to be up to the jury to sort through [the] facts and make some determinations as to how the accident occurred * * *."

Crediting defendant's evidence, and without considering its weight or credibility, we are satisfied that reasonable minds could differ as to whether or not there was comparative negligence on the part of plaintiff.

## II

### The Jury Instructions

The plaintiff next argues that the trial justice's jury instructions concerning plaintiff's burden of proof were "biased in structure and presentation" in favor of defendant; he contends that the instructions

3. The trial justice's introductory remarks read in pertinent part as follows:

"Now, in this case, the plaintiff, Michael Botelho, alleges that on July 28, 2000, in the City of Warwick he sustained injuries and other damages as a result of the negligent conduct of the defendant, * * * Caster's Bicycles and Fitness acting through its agent and employees.

"The defendant denies any negligence, and further claims that any and all damages that may have been sustained by the plaintiff were proximately caused by the plaintiff's own negligence.

"Again, members of the jury, this is a civil action, and under our law, the plaintiff bears the burden of proving each of the case elements by a preponderance of the evidence * * *."

4. In the course of her instructions concerning negligence, the trial justice made the following statement:

"[B]icyclists who choose to test-ride a bicycle have a duty to reasonably familiarize themselves with the basic operation of the bicycle before using same. Also, bicyclists traveling on highways are required to exercise ordinary care for their own safety, and its exercise requires such precautions as are commensurate with dangers reasonably to be anticipated.

suggested that, as a prerequisite to a finding of negligence on the part of defendant, plaintiff was required to present evidence that he had himself satisfied a number of duties. The plaintiff identifies three parts of the jury instruction as constituting the alleged structural defects. Specifically, the plaintiff objects to (1) the trial justice's introductory remarks, which briefly summarized the arguments of the parties,[3] and (2) the trial justice's recitation of the duties incumbent upon a bicyclist operating his or her vehicle on public roadways.[4]

■ This Court's frequently articulated raise-or-waive rule precludes us from considering issues at the appellate level that were not properly presented before the trial court. *See, e.g., Iselin v. Retirement Board of the Employees' Retirement*

"In general, the bicyclist, as the operator of a vehicle, is subject to the same rules of the road as persons driving a motor vehicle. They must ride at reasonable rates of speed, maintain an adequate look-out, and keep their bicycle under control. And the jury must consider the total circumstances surrounding a cyclist's control or loss of control in determining negligence, if any."

The quoted statement followed immediately after the trial justice's instruction addressing the duties Caster's owed to its customers (specifically bicycle test-riders). The trial justice did not instruct the jury as to which party bore the burden of proving any departure from such duties.

The plaintiff also points to the trial justice's instruction on comparative negligence as setting forth an additional duty incumbent upon plaintiff:

"In this case, the plaintiff, Michael Botelho, had a duty as well.

"In connection with this occurrence, the plaintiff had a duty to use ordinary care for his own safety. More specifically, the plaintiff had a duty to exercise reasonable care for his own safety when test-driving the Kestrel KM40 on July 28, 2000, and a breach of that duty is negligence."

The plaintiff concedes, however, that, with regard to this final duty, the trial justice clearly indicated that defendant bore the burden of proving plaintiff's alleged breach.

*System of Rhode Island,* 943 A.2d 1045, 1051 (R.I.2008).

 We have noted that we are especially rigorous in the application of the raise-or-waive rule when considering objections to jury instructions. *See Tyre v. Swain,* 946 A.2d 1189, 1200 (R.I.2008); *see also Mead v. Papa Razzi,* 899 A.2d 437, 443–44 (R.I.2006). Rule 51(b) of the Superior Court Rules of Civil Procedure "bars a party from challenging an erroneous instruction unless [the party] lodges an objection to the charge which is specific enough to alert the trial justice as to the nature of [the trial justice's] alleged error." *Majewski v. Porter,* 121 R.I. 757, 764, 403 A.2d 248, 252 (1979); *see also Mead,* 899 A.2d at 443–44; *Bourque v. Stop & Shop Companies, Inc.,* 814 A.2d 320, 325 (R.I.2003). As we have had occasion to note, "[t]he purpose of the specificity requirement is to give the trial justice a chance to remedy any deficiency in the charge while there is still a meaningful opportunity to effectuate such a remedy." *Mead,* 899 A.2d at 444 n. 5; *see also DiFranco v. Klein,* 657 A.2d 145, 147 (R.I. 1995) ("The rationale behind this rule is to allow the trial justice an opportunity to make any necessary corrections to his or her instructions before the jury begins its deliberations."). In the absence of a sufficiently specific objection, "the trial justice cannot be expected to divine the nature of counsel's objection." *Mead,* 899 A.2d at 444.

 Although plaintiff's trial counsel made reference to "the [jury] instruction as drafted" during his argument in open court in support of his July 21 motion for judgment as a matter of law, he did not object to either the wording of the proposed instructions or the order in which various topics were presented in said instructions at that time or thereafter. Notably, after the jury had been instructed, plaintiff's counsel simply indicated that he was renewing his "objections to the submission of comparative negligence to the jury and all of the instructions obviously that derive therefrom."

These generalized objections did not suffice to preserve the issue of the "structure and presentation" of the jury instructions, which has become his principal argument on appeal. In view of the absence of a sufficiently specific objection before the trial court, plaintiff's "structure and presentation" argument is not properly before us.

Although plaintiff's trial attorney objected to the submission of the comparative negligence issue to the jury, it is clear that he never objected to either the structure or presentation of that instruction. As a result, the trial justice did not have an opportunity to react to the alleged shortcomings in the instructions. For this reason, we deem the issue waived for the purposes of the instant appeal.

### III

### The Motion for a New Trial

 After the jury rendered its verdict, Mr. Botelho moved for a new trial pursuant to Rule 59. Upon consideration of the written arguments of counsel, the trial justice denied the motion on September 12, 2006. The plaintiff contends that the trial justice failed to conduct the required analysis in passing upon the motion for new trial. Specifically, plaintiff argues that the trial justice failed to address whether the jury verdict "rendered substantial justice" and overlooked what plaintiff considers to be "overwhelming and uncontradicted evidence" of negligence on the part of defendant. In addition, plaintiff suggests that the trial justice applied a legal analysis which imputed assumption of the risk to plaintiff.

It would be difficult to improve upon the felicitous description provided several decades ago by the late Justice Thomas Kelleher relative to the duties of a trial justice as he or she considers a Rule 59 motion for a new trial. In his opinion in the case of *Ruggieri v. Big G Supermarkets, Inc.*, 114 R.I. 211, 330 A.2d 810 (R.I.1975), Justice Kelleher wrote as follows:

"In this jurisdiction a trial justice, as he [or she] considers the pros and cons of such a motion, acts as a 'super juror' or a 'thirteenth juror' in that he [or she] makes an independent appraisal of the evidence in the light of his [or her] charge to the jury. He [or she] can weigh the evidence and assess the witnesses' credibility. He [or she] can reject some evidence and draw inferences which are reasonable in view of the testimony and evidence in the record. After he [or she] finishes his [or her] sifting of the evidence, the trial justice must make a choice. He [or she] can * * * follow the route designed for times when he [or she] thinks the testimony so evenly balanced that the verdict should not be disturbed, or he [or she] can go the way established for those occasions when his [or her] 'superior judgment' tells him [or her] that the verdict is against the preponderance of the evidence and thereby fails to either do justice to the parties or respond to the merits of the controversy. If he [or she] determines that the evidence presented an 'evenly balanced-reasonable minds could differ' situation, he [or she] denies the motion. On the other hand, if he [or she] is of the opinion that the verdict is not a proper response to the evidence, he [or she] grants the motion." *Id.* at 215–16, 330 A.2d at 812.

While it is true that a motion for new trial should be granted "if the trial justice determines that the verdict is against the preponderance of the evidence and fails to do justice to the parties or to respond to the merits of the controversy," *Seddon v. Duke*, 884 A.2d 413, 414 (R.I.2005) (mem.) (internal quotation marks omitted), this Court has never overturned a trial justice's disposition of such a motion because of his or her failure to employ any particular "magic words" in rendering a decision—so long as the underlying analysis comports with the requirements of the law.

Having carefully reviewed the trial justice's ruling on the motion for a new trial, we conclude that she properly conducted the required analysis discussed above. The trial justice concluded that, in this case, "the evidence is such that reasonable minds could differ" as to proper disposition of the issues. At that point, it became unnecessary for the trial justice to proceed to any further analysis—including consideration of the "substantial interests of justice" factor. *See, e.g., Reccko v. Criss Cadillac Co.*, 610 A.2d 542, 545 (R.I.1992).

Moreover, the trial justice adequately articulated her bases for finding that sufficient competent evidence existed to justify the jury's verdict in light of the jury charge. Specifically, the trial justice discussed certain credibility and consistency issues relating to Mr. Botelho's testimony at trial. Additionally, the trial justice thoughtfully weighed the testimony of defendant's witnesses against the testimony of plaintiff's solitary witness (himself). She concluded that reasonable minds might differ as to the cause of the bicycle accident; she added that, for that very reason, reasonable minds could differ as to the negligence (*vel non*) of the parties. Upon review of the record, we cannot conclude that the trial justice overlooked or misconstrued material evidence or was otherwise clearly wrong in so finding.

Finally, although we appreciate the zealous advocacy of plaintiff's counsel, we have

been unable to perceive any indication in the record that the trial justice imputed negligence or assumption of the risk to plaintiff.

Consequently, we hold that the trial justice properly denied the plaintiff's motion for a new trial.

### Conclusion

For the reasons set forth in this opinion, we deny the plaintiff's appeal and affirm the judgment of the Superior Court. The papers in this case may be remanded to that court.